LOTTINGER, Judge.
This is a suit by petitioner, William Lamar Busby, and against defendants, Earl Martin, d/b/a Southern Electric Construction Company, and Consolidated Underwriters, for workmen’s compensation benefits seeking an award for total and permanent disability. The Lower Court awarded judgment in favor of petitioner and against the defendants, and the defendants have taken this appeal.
The accident giving rise to the claim of petitioner occurred on October 19, 1961 while petitioner was employed as a lineman by Earl Martin, d/b/a Southern Electric Construction Company. Consolidated Underwriters was the workmen’s compensation insurer of Mr. Martin. At the time of the accident the petitioner was atop a power pole “hanging bayonets” when his body came in contact wtih an electric charge of 34,500 volts. Petitioner claims that the charge rendered him unconscious for a period of time and it threw him in a position of hanging upside down against the pole until his co-workers could free him and return him to the ground. As a result of the accident, petitioner sustained serious injuries *661 which were diagnosed as deep burns to his right leg and foot, resulting in deep scarring and ulceration thereof, plus burns to his left forearm, and a cut in his head requiring some five or six stitches. Petitioner further claims that, as a result of the accident, he sustained psychological injuries, viz., a traumatic neurosis which likewise renders him totally and permanently disabled within the meaning of the workmen’s compensation act to return to his former employment as a lineman.
Immediately following the accident, petitioner was hospitalized in Slidell, Louisiana. Thereafter, he spent many days in clinics and hospitals, including Hotel Dieu in New Orleans, Louisiana, and was subjected to several operations and other treatment, all in an effort to effect a recovery from the unfortunate accident. The statutory medical benefits in the sum of $2,500.00 have been exceeded in the treatment of petitioner.
The Lower Court awarded judgment in favor of petitioner and against the defendants for total and permanent disability, in the sum of $35.00 per week beginning October 19, 1961 for the duration of his disability, not exceeding 400 weeks, together with five (5%) per cent per annum interest on each past due installment from its due date until paid. It also ordered that all accrued amounts with interest be paid in a lump sum, subject to a credit of $1,690.00 representing compensation already paid for the period from October 19, 1961 to October 11, 1962. The Lower Court awarded attorney fees at twenty (20%) per cent of the first $5,000.00 collected under the judgment, plus a sum equivalent to ten (10%) per cent on any amount collected in excess of $5,000.00 which are payable from the award made to plaintiff. In addition thereto the Lower Court fixed the expert fees, and taxed them as costs, and rejected the demand by petitioner for penalties and attorney fees. From this judgment the defendant has appealed alleging error on the part of the Lower Court and claiming that the petitioner has failed to show total and permanent disability as a result of the accident.
Testifying upon the trial of the matter were Dr. Jack R. Diamond, a general practitioner of Slidell, Louisiana, and Dr. James Allen Long, a psychologist who teaches on the staff of the Tulane University Medical School. By deposition we are favored with the testimony of Dr. Rufus H. Alldredge, an orthopedist, and that of Dr. Robert J. Meade, a plastic and reconstructive surgeon.
Dr. Alldredge, an orthopedic surgeon, examined the petitioner on November 19,1962. Dr. Alldredge, by way of deposition, testified as follows:
“As a result of this examination, it is my opinion, without special padding as referred to above for the wound on the medial side of the leg, it would probably be impractical or impossible for Mr. Busby to resume this type of work, but with a proper pad, he might be able to go back to this type of work, if the pad is properly applied to the metal bar and the leg on the medial side below the knee.
“I do not know how much pressure he will get on the other two burned areas, but he claims considerable soreness from pressure when bearing weight in such a way as he would with the full use of the hooks.
“I believe that probably Mr. Busby would be able to return to his regular work, using these hooks regularly with approximately 20 per cent permanent-partial disability of the leg below the knee and probably 10 per cent permanent-partial disability of the body, as a whole, if special and proper padding were applied.
“However, it must be admitted that this would cause some discomfort, probably in hot weather and perspiration, would be bothersome. This padding would *662 have to be renewed from time to time and there would be some cost involved in this.
“Without special padding, I feel reasonably certain that he would not be able to return to his work doing the same type of work as he did before and he would, therefore, be a hundred per cent disabled for the same type of work as he was doing when he was injured.”
Thus we find that Dr. Alldredge was of the opinion that petitioner would not be able to return to his former work and would be one hundred per cent disabled from doing this type of work unless special padding were applied to protect his leg. Even with the use of the special padding, he found a twenty (20%) per cent permanent-partial disability of the leg below the knee. This padding, according to Dr. Alldredge would cause discomfort and in hot weather perspiration which would be bothersome to petitioner.
The defense relies heavily on the testimony of Dr. Robert J. Meade, a plastic surgeon who performed three operations on the leg of petitioner. Throughout his testimony Dr. Meade testified to the effect that it was his opinion that insofar as the physical condition of petitioner was concerned he could return to his former work. His testimony was qualified by the repeated statements to the effect that his return to work would be on a trial basis to determine whether he was able to perform work of a similar nature. Upon further examination, however, Dr. Meade brought in the psychological factor when the testimony went as follows:
“Q. What significance, Doctor, do you give to Mr. Busby’s statement to you that he had talked with other lineman who knew men with similar injuries and they were not able to wear hooks again ?
“A. I feel this is quite significant. I think that this touches on the realm of psychiatry but, of course, every doctor no matter what he does gets problems of his private practice which are related to fear and this I find is a very difficult thing.
“For instance, a person who had an automobile accident is pretty shaky when they first go back to driving, some of them can’t do it, some people have a fear of height. When a person gets burned why he’s certainly much more conscious about being burned again and I think'the fact that he knows other people who have been unable to do this is certainly unfavorable as far as being able to carry out his previous job. I don’t think that this is a matter of a physical standpoint, I think this is psychological.
“Q. In other words, Doctor, you don’t think he has confidence in that leg because of that?
“A. Well, I’m not so sure that it’s confidence of the leg, I think it’s probably he doesn’t have quite as much confidence in electricity or his ability to to handle it.”
Dr. J. Alan Long, a clinical psychologist, who teaches psychiatry at the Tulane University Medical School, was of the opinion that Mr. Busby could not return to his former employment as a lineman due to psychological reasons. His diagnosis of Mr. Busby’s condition is as follows:
“Schizoid personality with traumatic neurosis and moderate reactive depression. Stress-severe. Predisposition-moderate. Impairment-severe.”
It is the testimony of Dr. Long which the defendants primarily attack. This testimony is attacked t for the reason that Dr. Long is not an M. D., and further upon the basis that there were possibly pre-existing conditions which might account for petitioner’s present mental condition. The records disclose that petitioner and his wife had *663 separated sometime prior to the accident and that just a couple of days before the accident the petitioner had filed bankruptcy proceedings. Although Dr. Long did testify that those might have some bearing upon the condition of petitioner, he stated that an “ * * * accident involving an electric shock by 34,000 volts could serve as a precipitating factor that would aggrevate a mental, insecure or emotional weakness or neurosis into a disabling traumatic neurosis.” Insofar as his qualifications as an expert, we might say that Dr. Long, as shown by testimony in the record, was most eminently qualified.
Dr. Jack R. Diamond testified that the petitioner’s right leg, due to the disability sustained from the accident, could not stand the wear and tear of a lineman’s work on poles without a painful tissue breakdown. He testified as to the effect the wearing of the lineman’s “hooks” would have upon the tender or scarred portion of petitioner’s leg and foot.
We believe that the above certainly shows beyond the shadow of any doubt that the injuries sustained by petitioner as a result of the accident are of such a nature as to permanently and totally disable him from doing any work of a reasonable character. Such was the decision of the Lower Court, and we certainly are unable to find any error in this holding. The Trial Judge has seen, heard and observed the demeanor of the witnesses. He is in a much more favorable position than we to decide questions of fact and we will not disturb his decision unless manifestly erroneous.
For the reasons hereinabove assigned, the judgment of the Lower Court will be affirmed ; all costs of this appeal to be paid by defendants.
Judgment affirmed.