ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

*v.* HOOK.

Opinion delivered July 22, 1907.

1. RAILROAD—FAILURE TO HEAT WAITING ROOM—PROXIMATE CAUSE.—Where a passenger was compelled to wait several hours in an unheated waiting room at a passenger depot, and contracted a cold there which developed into a case of pneumonia within 36 hours, and there was evidence tending to show that the pneumonia resulted from the exposure, the jury were justified in finding that the condition of the waiting room was the cause of the disease, and in holding the railroad company liable. (Page 587.)

2. EXPERT—FORM OF HYPOTHETICAL QUESTION.—An hypothetical question addressed to an expert witness need not embrace all the facts which the testimony tends to prove. *Ince* v. *State,* 77 Ark. 426, followed. (Page 589.)

3. SAME—DAMAGES TO HEALTH.—In an action against a railroad company for injuries resulting from defendant's failure to heat its waiting room, causing plaintiff to be ill for some weeks from a dangerous malady, it was not error to instruct the jury to compensate plaintiff "for the diminution, if any, of his physical health and vigor occasioned by the alleged wrong sued for." (Page 590.)

Appeal from Franklin Circuit Court; *Jeptha H. Evans,* Judge; affirmed. .

Walter Hook, a minor, by his next friend, sued the St. Louis, Iron Mountain & Southern Railway Company, alleging that on the 27th of December, 1905, he entered defendant's depot at Cabin Creek, Arkansas, for the purpose of taking a passenger train from Cabin Creek to Coal Hill, Arkansas; that he was compelled to remain in said depot for about two hours; that defendant's waiting room was cold, damp and unsanitary, and that defendant contracted a severe cold, which a few hours later developed into pneumonia. Damages in the sum of $1,000 were asked.

There was evidence which tended to prove the allegations of the complaint.

Dr. Cowan, a medical expert, was asked the following hypothetical question:

"Suppose you take a child of this age, this size, on a cold, damp, drizzly, rainy day, a severe gale of wind blowing from the northwest, and you clothe him with leggings, good, warm, woolen clothes, under and upper, and take him 300 yards to a place where there was no fire in the stove, no preparations for a fire in a room ten by seven or ten by fifteen, where the room was full of dust and dirt, and ambeer spit on the floor, and you should be called in to see him, where would you trace this disease to? To what condition of affairs would you trace it?" To this he answered: "Well, if called in to see that child within 24 or 36 hours after it had been in that room, I would trace pneumonia to exposure in a room of that kind."

The court instructed the jury as follows: "6. If you find for the plaintiff, you will assess the amount of recovery at such a sum of money as in your judgment, from the evidence, will compensate him for the pain and suffering, mental and physical, if any, and the diminution, if any, of his physical health and

vigor occasioned by the alleged wrong sued for, if you find such wrong to have existed and to have proximately caused the injury sued for. If you find for the defendant, you will simply say so in your verdict."

A verdict for $500 was rendered in plaintiff's favor. Defendant has appealed.

*Oscar L. Miles* and *Lovick P. Miles,* for appellant.

1. Review the testimony and contend that the evidence is not legally sufficient under the rule in *Catlett* v. *Railroad Company,* 57 Ark. 461, 468, nor to show that the child's illness was the direct consequence of the exposure at the depot and the conditions existing there. 94 U. S. 475; 76 Ark. 430. Proximate cause and the legal sufficiency of evidence to support an allegation of proximate cause are questions of law to be decided by the court. 33 Ark. 350; 55 Ark. 510; 56 Ark. 279; 58 Ark. 157; 69 Ark. 402; 76 Ark. 434.

If the plaintiff's evidence tends equally to sustain either of two conclusions as to the cause of an effect, one of which conclusions he must establish by a preponderance of evidence in order to sustain a verdict in his favor, then he will be held to have failed to prove his cause of action. 99 Mass. 605; 57 Ark. 383.

2. It was error to permit a hypothetical question to the physician which embraced only a statement as to the weather, the manner in which the child was clothed, the distance walked in going to the depot, and the conditions existing in the depot, and omitted the facts relative to his recent exposure to pneumonia, that he was delicate, habitually kept indoors, that he was walked about by his father in the mist and snow during the wait at the depot, and other facts that might have had a bearing on the cause of illness. .

3. The sixth instruction was erroneous in directing the jury, if they found for appellee, to compensate him for "the diminution, if any, of his physical health and vigor," etc. There was no evidence on which to base that part of the instruction. 16 Ark. 628; 26 Ark. 531; 42 Ark. 57; 54 Ark. 336.

*Sam R. Chew,* for appellee.

1.  It is a statutory duty, aside from the common law duty, resting upon railroads in this State to keep their waiting rooms for passenger accommodation, at all proper times comfortably heated, and to maintain them in a clean and sanitary condition. Kirby's Digest, § § 66, 34. The proof shows that on the day complained of appellant was in open and flagrant violation of this duty.

2.  Principles announced in *Railway* v. *Wilson,* 70 Ark. 136, control in this case, and the court's instructions are in accord therewith.

3.  The doctrine of imputed negligence does not apply. "A child of tender years can not be guilty of negligence, nor can the ·contributory negligence of the parent be imputed to it, so as to prevent a recovery in a suit brought in an effort to recover damages for injuries caused by the act of another." 72 Ark. 400; *Id.* 1; 68 Ark. 1.

4.  This court holds to the doctrine that an hypothetical question need not embrace all the facts which the testimony tends to prove. 77 Ark. 426.

5.  The sixth instruction was based upon proof of appellee's health and vigor having been impaired. Moreover, the verdict shows that future impairment was not considered. The verdict was, therefore, not excessive. 78 Ark. 100.

HILL, C. J. The Reporter will state the substance of the evidence and the instructions, so far as the same are material to the issues discussed. It will be seen therefrom that this is an action to recover damages of the railroad for maintaining a waiting room in such·condition that the appellee, a child, while waiting for a belated train, contracted pneumonia.

1.  The first question is as to the sufficiency of the evidence. Testing the same under the rule which has so often been applied, and which is aptly expressed in *Catlett* v. *Railway Company,* 57 Ark. 461, as follows: "After drawing all the inferences most favorable to the verdict that the evidence will reasonably warrant, is it sufficient in law to sustain the verdict?"

The evidence shows that the child was necessarily kept in the station for some time on a cold winter night. A northwest wind was blowing, and it was "spitting snow." Pneumonia was prevalent in the vicinity. The station was small, dirty, ill-

smelling and unheated. The child got very cold, and his father several times took him out of the room and walked him around the station under cover of the roof in order to keep him warm. When he got on the heated coach of the train, he was shivering, and at once fell asleep. The next night he woke up with a chill; a physician was called in, and he was found to be in high fever, and pneumonia had developed.

The child was warmly clad, and was only taken three hundred yards from the house to the station, and there waited some time for the train.

One of the witnesses called by appellant, Dr. Cowan, says that sometimes physicians can trace the direct cause of pneumonia, but can not always do so. He further stated, when an hypothetical question was put to him which assumed as true the facts above outlined, and other facts proved by appellee, that if he was called to see a child within 24 or 36 hours after it had been in such a room as indicated and found him with pneumonia, he would trace the cause of the pneumonia to such exposure.

There is other testimony tending to prove that the exposure in the waiting room caused pneumonia. The real question of the case is whether these facts are sufficient to sustain the verdict, connecting the pneumonia with the condition of the station. There is much testimony on the other side to indicate causes other than the exposure in this room as the cause of the disease, and also testimony tending to prove that the connection of the disease with this exposure is speculative.

The Supreme Court of the United States, in *Milwaukee & St. Paul Ry. Co.* v. *Kellogg,* 94 U. S. 469, says: "The true rule is, that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft-cited case of the squib thrown in the market place. *Scott* v. *Shepherd,* 2 Wm. Bl. Rep. 892. The question always is, was there an unbroken connection between the wrongful act and the injury, a

continuous operation? Did the facts constitute a continuous succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

It can not be said, in view of this evidence and the test above announced, that it was the duty of the court to take the case away from the jury upon the question of proximate cause.

2. If the condition of the waiting room was the proximate cause of the pneumonia, then the railroad company is liable. *St. Louis, I. M. & S. R. Co. v. Wilson,* 70 Ark. 136.

This case is approved in the last edition of Hutchinson on Carriers. 2 Hutchinson on Carriers, 931.

3. Objection is made to an hypothetical question propounded to the physician by appellee. The contention is made that it is defective in that it failed to present to the witness other facts than those therein mentioned which had been proved, and which counsel contend should have been considered before an answer was required of the witness. Counsel say: "The rule of law is elementary which makes it error to propound an hypothetical question when so many vitally material facts are withheld from the witness to whom the question is propounded."

Prof. Wigmore states the rule otherwise, as follows: "The questioner is entitled to the witness' opinion on any combination of facts that he may choose. * * * For reasons of principle, then, and to some extent of policy, the rational conclusion would be that the questioner need not cover in his hypotheses the entire body of testimony put forward on that point by him or by the opponent, but may take as limited a selection as he pleases and obtain an opinion on that basis."

This statement was approved in *Ince v. State,* 77 Ark. 426. The question objected to did not offend against it.

4. Instruction six is objected to on the ground that it authorized the jury to compensate "for the diminution, if any, of his physical health and vigor occasioned by the alleged wrong sued for," and that there was no evidence upon which to base it. The evidence shows that the child was quite ill for some weeks with this dangerous malady; and necessarily for a time there was a diminution of his physical health and vigor. There is no suggestion in this instruction of any permanent diminution of the same.

Other criticisms to the instructions are made, but the court is unable to find error in them, and does not think that the verdict is excessive.

Judgment is affirmed.

McCulloch, J., (dissenting.) I do not think the evidence in this case warrants a recovery of damages. The most that it shows is that the child *might* have contracted pneumonia from exposure to cold in the station while waiting for a train. This is too speculative and uncertain to justify a finding that the illness did result from that cause. Before the defendant can be made to pay damages on account of the illness, something more should have been shown than the bare possibility that this was the cause. The mere fact that the disease might have resulted from that cause is insufficient. 13 Cyc. 216; *Trapnall* v. *Red Oak Junction,* 76 Iowa, 744. The evidence shows just as clearly that the illness resulted from other causes. Another child in the same family had at that time just recovered from a spell of pneumonia, and this malady was epidemic in and about Coal Hill when the child was taken there. Besides, the weather was very inclement, and there was necessarily some exposure in going to the station; and the evidence shows that the father of the child, during the wait for the train, walked with him in the mist and snow several times around the station house, instead of remaining in the house, where it was at least dry.

Pneumonia is, we are told by good authority, infectious and in a measure contagious, and, if this be true, there is abundant evidence of other opportunities for the child to have contracted the disease. The defendant violated its duty in not making the station comfortable for its passengers, but I do not think the evidence makes it sufficiently certain that injury re-

sulted from the omission, to justify an assessment of damages. Therefore I dissent.