DOBBS *v.* STATE.

Crim. 3939

Opinion delivered July 8, 1935.

*Kenneth C. Coffelt* and *Wm. J. Kirby,* for appellant.

*Carl E. Bailey,* Attorney General, *Guy E. Williams* and *Ormand B. Shaw,* Assistants, for appellee.

SMITH, J. Fannie and Louisa Orr, two sisters, elderly ladies, lived in a rural community, with their nearest neighbor about a mile away. Appellant went to their home about dark, and demanded money, and, when he was given about $160, he insisted that this was not all the money the women had. The women asked him to take the money and leave them alone, but he said dead people told no tales, and he proceeded to beat both women with a stick of stove wood. After beating Fannie Orr into insensibility, he cut her throat. He beat Louisa Orr also and attempted to cut her throat. Appellant set fire to the house, and left it burning, and it was entirely destroyed. Fannie was dead when he left. Fortunately, Louisa's throat was only lacerated and she was able to drag the body of her sister out of the house before it was consumed by the fire. The identification of appellant was complete as the perpetrator of the crime. He was tried and convicted for the murder of Fannie Orr and given a death sentence. The sufficiency of the testimony to prove the commission of the homicide is not questioned, but insanity at the time of the commission of

the crime was interposed as a defense. It is not insisted that there was any error in the instructions which submitted that question to the jury.

It is first insisted that error was committed in refusing to quash the indictment because of the presence of A. B. Cornett as a member of the grand jury which returned the indictment. The record recites the following proceedings in impaneling the grand jury: "Whereupon Frank Dobbs, who was being held to await the action of the prospective grand jury, was brought before the court, and the court asked him if there was any one of the prospective grand jurors whom he wished challenged. Whereupon the said Frank Dobbs did then and there challenge A. B. Cornett. Whereupon the court overruled the said challenge of the said A. B. Cornett by the said Frank Dobbs." It is insisted that the right to challenge the juror Cornett should have been accorded because of the bias and prejudice of the juror against appellant. This, however, is not a ground upon which the right to challenge a grand juror could be predicated. The statute upon that subject reads as follows: "Every person held to answer a criminal charge may object to the competency of any one summoned to serve as a grand juror, before he is sworn, on the ground that he is the prosecutor or complainant upon any charge against such person, or that he is a witness on the part of the prosecution, and has been summoned or bound in a recognizance as such; and, if such objection be established, the person so challenged shall be set aside." Crawford & Moses' Digest, § 3005.

In the case of *Threet* v. *State,* 110 Ark. 152, 161 S. W. 139, the defendant had been indicted while confined in jail without being afforded the opportunity to challenge the competency of any member of the grand jury. But this was held not to be erroneous when it was not made to appear that the accused had been denied the benefit of some right secured by the statute quoted. The statute conferred no right to challenge Cornett because of his bias or prejudice.

At the conclusion of the testimony on the part of the State showing the commission of the homicide by appel-

lant, testimony was offered on his behalf tending to show that he was insane. A number of non-expert witnesses were introduced, who, after stating the facts upon which their opinions were based, expressed the opinion that appellant was insane. Two physicians were called, who testified as experts in his behalf. These were Doctors R. E. Rowland and E. T. Ponder.

Dr. Rowland was asked his opinion about appellant's sanity, based upon a hypothetical question, and expressed the opinion that the facts therein stated indicated that the person inquired about was of abnormal mind. He admitted that he made no examination of appellant, and declined to say whether appellant was sane or insane.

Dr. Ponder did make a personal and physical examination of appellant of two hours' duration, and he expressed the opinion that appellant was insane. He stated that this opinion was based upon appellant's personal and family history (including the fact that two of his mother's brothers had been insane), his own examination of appellant, and the testimony which he had heard in the case. He expressed the opinion that appellant was suffering from *dementia praecox*, which is a form of insanity.

It is very earnestly insisted that error was committed in refusing to permit Professor C. C. Denney to answer the hypothetical question which had been propounded to and answered by Dr. Rowland. This witness testified that he was a graduate of Valparaiso University, and had done three years' postgraduate work in Peabody Teachers College, and had taught psychology in the State Teachers College for twenty-five years, and that the science which he taught included the subject of insanity. The court held that the witness had not been properly qualified to testify as an expert, and that ruling is assigned as error.

The witness was asked this question: "Q. Professor, in the study of your vocation and in the practice of it you are capable of forming an opinion about whether or not an individual is sane or insane if you have heard history and actions reiterated to you, are you not?" He answered the question as follows: "A. I would not like

to pass judgment unless I knew their kind of habits and the courses they have pursued. I think we would have some right to presume that I would have." Upon making this answer permission was asked to propound the hypothetical question. The answer quoted indicates that the witness was unwilling to answer, because he was unable to pass judgment unless he knew the habits of appellant and "the courses they have pursued." Had the witness possessed this information, which he admitted he did not have, he, like other witnesses who testified on behalf of appellant, should have been permitted to testify as a non-expert, basing his opinion on these observations.

It was held, in the case of *Hankins* v. *State,* 133 Ark. 63, 201 S. W. 832, that it was error to admit the testimony of nonexpert witnesses who gave their opinion as to the sanity of the accused without stating any facts upon which they based their opinions and without showing that they were qualified to express such an opinion by stating the facts upon which the opinions were based. The converse of this rule is true. Such testimony may be admitted where the witness shows that he has had the opportunity to associate with and to observe the accused to an extent sufficient to form an opinion as to the accused's sanity. He may then state what that opinion is, the value of such testimony being, of course, a question for the jury. But this witness was not asked to give testimony of that character. He had not had this opportunity, as his answer indicated that he did not feel qualified, lacking it, to express an expert opinion.

We do not decide, however, that the testimony would have been competent had he stated that he was qualified to answer the hypothetical question. The law does not permit the witness himself to pass upon his qualifications to testify as an expert. This is a question for the court.

It is said in the brief in appellant's behalf "that expert opinion on the question of insanity based on hypothetical questions is at best but a mere guess on the part of the so-called expert." It must be confessed that there is some foundation for this criticism when we observe, as we constantly do, the contrariety of opinions

which experts express in answer to the same hypothetical question. Insanity is a most illusive subject, and none of the courts have ever permitted novices and amateurs to express opinions answering hypothetical questions. Such witnesses may only express such opinions as are based upon personal association with and observation of the person whose sanity is the subject of inquiry, and then only after they have stated the facts showing opportunity for association and observation sufficient to afford a fair and reasonable basis for the formation of the opinion.

In Smoot's Law of Insanity, page 498, it is said: "An expert witness in an insanity case is, as the name implies, a witness who has special skill and learning in the detection and treatment of mental diseases and abnormal mental conditions. But, from a practical standpoint, it is not an easy matter to determine just what amount of knowledge and experience is necessary in each particular case in order for the witness to measure up to the requirements. Whether the witness is qualified as an expert in the case in question is a matter of law for the trial judge to decide. Having the witness before him, where he can the more accurately judge such witness' fitness and qualification, the matter rests very largely within the sound discretion of the trial court, and his decision, upon appeal, will be presumed to have been proper, in the absence of a showing to the contrary. The witness' own opinion as to his own qualification has been held to be immaterial." The author then proceeds to say that out of the numerous authorities, among which there is more or less conflict, well-defined rules have been evolved to aid the trial courts in measuring the qualifications of such witnesses, and he proceeds to state three of these:

"(1) As a general rule, such witness should have a general knowledge of medicine as a practicing physician, with a general knowledge of the mind and its functions, and should have a general knowledge of the mental phenomena and the disorders which attack the mind." The author says, however, that in some jurisdictions exceptions have been made permitting persons to testify

as experts who did not possess all these qualifications but who had had experience in the care and observation of the insane.

"(2) Where the claimed mental derangement is of a common type, any regular physician in good standing, doing general practice, and who has studied the diseases of the mind along with the other diseases of the body, may testify as an expert, the extent of his learning going alone to his credibility.

"(3) Where the claimed insanity is not of the commoner type, but is of a rare, unusual, or complex nature, then the witness called as an expert should qualify by showing a reasonable amount of experience in the study and investigation or observation of the kind or class of insanity under investigation."

We conclude therefore that there was no error in refusing to permit Professor Denney to testify as an expert and to answer the hypothetical question.

It is insisted that error was committed in limiting the scope of the redirect examination of Dr. Ponder, and this assignment of error has given us more concern than any other question presented on the appeal. Some of the uncertainty arises out of the state of the record, which has not been entirely removed by a stipulation intended to clarify it. It is said in appellant's brief that during the cross-examination of Dr. Ponder by the prosecuting attorney the court stopped the cross-examination. The witness had been asked this question: "Q. You know anything about a normal man planning a robbery and then carrying it out and then hiding his act? That would not be the acts of a normal sane man?" The witness answered that this would not indicate the acts of a sane man. This question was then asked: "Q. He had reasoning power to do that?", but the witness was not permitted to answer and was excused by the court.

The stipulation amending the record recites that "Mr. Coffelt (counsel for appellant) was seeking to redirect-examine defense witness, Dr. Ponder." It is not stated what additional questions counsel wished to propound.

We think it would have been well for the court to have permitted the prosecuting attorney to continue his cross-examination, and have permitted a redirect examination of the witness by appellant's counsel; but we are unable to say that this was prejudicial error requiring the reversal of the judgment. It does not appear what questions would have been propounded, nor what answers would have been given, but it does appear that the witness had been examined at length and had been permitted to state his opinion as to appellant's sanity and to give his reasons therefor. The trial judge necessarily has a discretion as to the extent of the examination of a witness, and we think it is not shown that this discretion was abused.

It is insisted that error was committed in permitting the State to question nonexpert witnesses who were allowed to express the opinion that appellant was sane. These witnesses first stated, however, the facts upon which their opinions were based. They had, generally speaking, about the same opportunities for observation as the nonexpert witnesses who had testified that appellant was insane, and without protracting this opinion it may be said that all were qualified under the tests announced in the Hankins case, *supra*.

It is argued that error was committed in not confining the scope of the direct examination of Dr. Murphy, who testified as an expert on behalf of the State. Dr. Murphy testified that he attempted to examine appellant, who at first answered his questions but who later asked the purpose of the examination and, when told what it was, declined to answer other questions or to submit to an examination on the ground that his attorney was not present. Specific objection was made to questions relating to delusions as symptoms and evidences of certain forms and stages of insanity upon the ground that in the form of insanity with which Dr. Ponder testified appellant was afflicted, delusions and hallucinations are not the principal symptoms.

But Dr. Ponder did testify that appellant had a form of insanity known as *dementia praecox*, and it was therefore competent for Dr. Murphy to testify as to the

manifestations of that disease. In that connection he testified that the principal outstanding symptom of *dementia praecox* is a delusion. Of necessity much latitude must be allowed in the cross-examination of an expert witness. This is necessary to determine whether he is merely guessing or has a substantial scientific basis for his opinion.

It is strongly insisted that it was erroneous to permit the State to ask Dr. Murphy the following question: "Q. Would there be anything to indicate insanity where a man borrows a gun from his brother-in-law and tells him that he is going over to collect some money from a neighbor, and he borrows the gun for the purpose of protecting himself from dogs that might attack him on the way, but instead of going over to his neighbors he goes over to the home of two women who were living alone and demands money and takes from them a considerable sum, or takes from them $160, and demands more money, and after they refused to give him more money he then commits murder, sets the house afire and then leaves, or fleeing, he hides his overcoat, and also cuts the sleeve out of the coat to do away with the blood stains, and gets away and the next day he is apprehended out in the woods. After he is arrested he admits that he was present at the time the crime was committed, but that he was on the outside and his partner committed the crime, and that he claims that the reason for the blood on the coat was caused by dragging one of the women out of the house, is there anything under those circumstances that would indicate insanity?"

The objection to the question is that it left out of account the following facts which are said to be very essential and undisputed: "That as a child appellant was unlike other children. That he was never reliable in his school work, and was only able to make four grades in ten years in school, and that later in life he was never reliable in his work."

Now it is the law that hypothetical questions must contain the undisputed facts essential to the issue. *Kelley v. State*, 146 Ark. 509, 226 S. W. 137. But it cannot be said that the omitted facts are undisputed. Members

of his immediate family so testified, but it was not shown how long appellant had attended school during any of the ten years in which he advanced only four grades. Witnesses on behalf of the State, several of whom had known appellant all of his life, gave testimony which makes it questionable whether the omitted facts were true.

The hypothetical question propounded to Dr. Rowland recited, in substance, the facts assumed in the question propounded to Dr. Murphy. This only summarized the conduct of appellant according to the State's evidence. It will be observed that the question propounded to Dr. Murphy does not ask the witness to state his opinion as to whether appellant was sane or insane, but whether the circumstances mentioned would indicate insanity.

In the case of *Taylor* v. *McClintock*, 87 Ark. 294, 112 S. W. 405, it was said: "Hypothetical questions must fairly reflect the evidence, and, unless they do, the resultant opinion evidence is not responsive to the real facts, and can have no probative force. *Quinn* v. *Higgins*, [63 Wis. 664] 24 N. W. 482. The hypothetical case must embrace undisputed facts that are essential to the issue. In taking the opinions of experts, either party may assume as proved all facts which the evidence tends to prove. The party desiring opinion evidence from experts may elicit such opinion upon the whole evidence or any part thereof, and it is not necessary that the facts stated, as established by the evidence, should be uncontroverted. Either party may state the facts which he claims the evidence shows, and the question will not be defective if there be any evidence tending to prove such facts. When a party seeks to take an opinion upon the whole or any selected part of the evidence, it is the duty of the court to so control the form of the hypothetical question that there may be no abuse of his right to take the opinion of the experts. The right may be abused by allowing the opinion to be given in such a way as to mislead the jury by concealing the real significance of the evidence, or by unduly emphasizing certain favorable or unfavorable data. On the above propositions, see 1 Gr. Ev., § 441, pp.

561, 562; *Ince* v. *State,* 77 Ark. 426, 93 S. W. 65; *St. Louis I. M. & S. Ry. Co.* v. *Hook,* 83 Ark. 584, 104 S. W. 217.''

Here the prosecuting attorney propounded a question which embraced what he probably conceived to be the essential and undisputed facts. The question recites facts which the evidence tends to prove are true, but, even though they were disputed, he had the right to do so. He had the right also ''to take the opinion'' of the expert upon a selected part of the evidence, subject to the duty of the court to so control the form of the question as to avoid an abuse of his right to take the opinion of the expert. Counsel for appellant had the right, and appears to have exercised it, of interrogating the witness concerning the facts recited in the question, when considered in connection with other facts which the evidence tended to establish.

We conclude therefore that there was no error in permitting this question to be asked.

Upon a consideration of the whole case, there appears to be no prejudicial error requiring the reversal of the judgment, and it must therefore be affirmed. It is so ordered.