Argued June 7, 1968, reversed and remanded January 15, petition
for rehearing denied January 31, 1969

SANDOW, *Appellant, v.* WEYERHAEUSER
COMPANY, *Respondent.*

449 P. 2d 426

Marvin S. Nepom, Portland, argued the cause for appellant. With him on the brief was Ben T. Gray, Portland.

Floyd A. Fredrickson, Portland, argued the cause for respondent. With him on the brief were Gray, Fredrickson & Heath, Portland.

Before SLOAN, Presiding Justice, and GOODWIN, DENECKE, HOLMAN and LUSK, Justices.

HOLMAN, J.

This is an action under the Jones Act for damages for personal injuries sustained by plaintiff in

the course of his employment as a seaman aboard defendant's vessel. Plaintiff received a judgment for $5,000 general damages. Thereafter the trial court ordered a new trial unless the plaintiff filed a remittitur of all the judgment in excess of $750. Plaintiff appealed.

The basis for the remittitur was that the verdict was excessive for the superficial cut on the forehead suffered by plaintiff. Plaintiff testified that he had felt depressed, had suffered blackouts and dizziness, and had experienced suicidal feelings. The trial court took the consideration of these complaints from the jury because there was no evidence that they were caused by the injury to plaintiff's head. Plaintiff offered the testimony of a clinical psychologist to the effect that plaintiff's depression was caused by the injury. The trial court refused to admit the testimony on the ground that the witness was not qualified to give such testimony because he was not medically trained.

Plaintiff admits that in a Jones Act case the trial court has the authority to grant a new trial, unless plaintiff files a remittitur, when the judgment exceeds any rational appraisal. *Hust v. Moore-McCormack Lines, Inc.,* 180 Or 409, 435-36, 177 P2d 429 (1947). A clear abuse of discretion or some extraordinary legal situation must be demonstrated before relief will be granted by an appellate court in such a situation. *Delta Engineering Corporation v. Scott,* 322 F2d 11, 15 (5th Cir 1963), cert. den. 377 US 905, 84 S Ct 1164, 12 L Ed 2d 176 (1964). The evidence showed plaintiff suffered a cut 2 inches in length which left a scar that the trial judge could not see from a distance of five feet. In the absence of testimony connecting plaintiff's complaints with the superficial injury to his

head, we cannot say the trial judge erred in concluding that the judgment exceeded any rational appraisal.

The principal question to be decided in this case is whether the trial court erred in refusing to admit in evidence the opinion of a clinical psychologist that the superficial injury to plaintiff's head caused the emotional disturbance of which he complained. Had the opinion been admitted it would have furnished a basis for allowing the jury to consider whether plaintiff's depression was the result of the accident.

■ To warrant the use of expert opinion testimony, inferences being drawn must be so related to some science, profession, business or occupation that is sufficiently technical that a lay juror cannot be expected to be equally well qualified to form a worthwhile judgment. *Ritter v. Beals et al*, 225 Or 504, 525, 358 P2d 1080 (1961); *Welter, Adm'x. v. M & M Woodworking Co.*, 216 Or 266, 278-79, 338 P2d 651 (1959). Obviously, the question upon which the witness's opinion was sought was one which the average juror, unaided, would not have the skill to decide.

■ In addition, the witness must have such skill, knowledge or experience in the field or calling in question as to make it appear that his opinion or inference-drawing would probably aid the trier of the facts in his search for the truth. *Scott v. Astoria Railroad Co.*, 43 Or 26, 38, 72 P 594 (1903); *Jenkins v. United States*, 307 F2d 637 (DC Cir 1962); McCormick, Evidence § 13 (1954). It is this last-stated requirement which is in issue here.

The witness was allowed to testify, without objection, that he submitted plaintiff to a battery of psychological tests, the results of which indicated that plaintiff was suffering from depression. It was only

when he was asked for an opinion as to the cause of plaintiff's depressed condition that objection was made and sustained.

Not all psychologists have the same experience and training. Our consideration is, of course, limited to one having the experience and training of the witness in question. He had a Ph.D. in Clinical Psychology and was a member of the American Psychological Association and the clinical division of that association. He was a diplomate in clinical psychology of the American Board of Examiners in Professional Psychology. He had worked in clinics and in the private practice of psychology for the last 20 years. He was licensed to practice psychology in the states of Oregon and California.

An examination of the area of expertise of a clinical psychologist is in order to see if a psychologist's opinion in the present field of inquiry would be of probable probative value to the jury. The information offered was that there was a causal connection between plaintiff's emotional difficulties, for which plaintiff offered no medical explanation, and the previous superficial injury. In Anastasi, Fields of Applied Psychology 344 (McGraw-Hill 1964), the following statement appears:

"A major objective of the clinical psychologist's diagnostic function is to provide a personality description of the individual case. Such a description is unique for each person, covering the specific behavioral difficulties the individual manifests *as well as the antecedent circumstances that led to their development* * * *." (Emphasis supplied.)

Harrower, *Differential Diagnosis,* in Handbook of Clinical Psychology 381 (Wolman ed, McGraw-Hill

1965), has the following statement relative to the breadth of the field of a clinical psychologist:

"* * * Perhaps more than any other recently coined term, 'psychodiagnostics' may be said to describe activities which are unique to clinical psychologists of the present day. Speaking of the range of the objectives of psychodiagnosis, Thorne (1948) has stated the following:

" 'In modern clinical science the objective of diagnosis involves more than identifying and naming a psychological syndrome. Recognizing that the personality dynamics in each individual case are different, psychodiagnostics has moved beyond problems of classification *to the more mature objective of completely describing the idealogical factors causitive of disorder.* Among the objectives of psychodiagnostics are:

" '1. *To demonstrate the etiological factors.*

" '2. *To differentiate between organic and functional disorders.*

" '* * * * *.' " (Emphasis supplied.)

The following statement relating to the activities of a clinical psychologist appears in Ruch, Psychology and Life 12 (Scott, Foresman & Company, 7th ed 1967):

"One of the most important of these is *psychodiagnosis,* the total study of an individual to determine his present psychological functioning *in relation to past events* and to predict what may be expected from remedial measures * * *." (Second emphasis supplied.)

The above literature indicates that there is no doubt in the minds of writers in the field of psychology that properly-qualified clinical psychologists are skilled in the field of inquiry relevant here. Courts, as is proper, have lagged in recognizing the expertise of an evolving profession. Cases on the subject are

not numerous. The most prominent is *Jenkins v. United States,* supra. There the criminal defendant asked psychologists to testify to their opinions regarding his mental condition at the time of the alleged crime, and to say whether in their opinions the acts were results of the mental condition. The trial court refused to let the jury consider the psychologists' testimony. The reason for the court's refusal was that the psychologists were not medically trained. Without ruling on the competence of the particular psychologists in question the appellate court recognized that psychologists with the proper training could have aided the jury in its search for the truth. Also see *Blunt v. United States,* 389 F2d 545 (DC Cir 1967); *People v. Davis,* 62 Cal2d 791, 44 Cal Rptr 454, 402 P2d 142 (1965); *Hidden v. Mutual Life Insurance Co. of New York,* 217 F2d 818 (4th Cir 1954). In *People v. Hawthorne,* 293 Mich 15, 291. NW 205 (1940), a majority of the court held that a person with a Ph.D. in psychology was competent to testify to his opinion of a criminal defendant's sanity. Also see *Watson v. State,* 273 SW2d 879 (Tex Crim 1954). In *State v. Padilla,* 66 NM 289, 347 P2d 312 (1959), the court recognized that a properly-qualified psychologist could administer tests concerning mental condition and give his opinion concerning their results but held that the witness in question was not shown to have been properly qualified, because he did not have the requisite postgraduate training in clinical psychology and did not possess a Ph.D. Some courts have held that a medical education is necessary in qualifying to testify concerning mental and emotional matters. *Dobbs v. State,* 191 Ark 236, 85 SW2d 694 (1935). Cf. *People v. Spigno,* 156 Cal App 2d 279, 319 P2d 458 (1957).

The majority of the available case law indicates

that a properly-qualified clinical psychologist is competent to testify concerning a person's mental and emotional condition despite his not having medical training. Though we find no cases which hold that psychologists are competent to testify as to the causitive factors of a given mental or emotional condition, the accepted literature in the field of psychology states that such factors are within their expertise.

■■ We hold that clinical psychology has become established and recognized as a profession whose members possess special expertise in the field of mental and emotional disorders and that a psychologist who is a diplomate in clinical psychology of the American Board of Examiners in Professional Psychology, who is a member of the American Psychological Association and who is licensed to practice psychology in Oregon is qualified to express an opinion such as the one offered by the witness in question. The law does not require that in order to qualify as an expert the witness be better qualified than anyone else. It only requires that he have sufficient expertise to make it probable that he will aid the jury in its search for the truth. Therefore, the trial court erred in refusing the expert testimony offered and the refusal was necessarily prejudicial. The judgment of the trial court is reversed and the case is remanded for a new trial.