278 A.2d 842.

STATE *vs.* STEPHEN ROBERTSON.

JUNE 25, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. The defendant was tried before a jury in the Superior Court on two indictments each of which charged him with murder. In each case be pleaded not guilty and not guilty by reason of insanity, and was found guilty of first degree murder and sentenced to life imprisonment. He is now here on a bill of exceptions and the only excep-

tion he presses is to the trial justice's refusal to permit a psychologist whom he called as a witness to testify in substance as to whether by reason of his mental condition he was unable to distinguish right from wrong.

The circumstances of the offenses, while not material to the cases in the posture in which they are here, are referred to briefly to provide a context for the evidentiary ruling. On the night of October 5, 1967, defendant visited a tavern in Newport. He played shuffleboard, drank six to eight splits of beer, and departed shortly after midnight. He then proceeded to a diner where upon arrival he observed two or three sailors arguing with an acquaintance of his. Shortly thereafter he left the diner, returned within a few minutes carrying a rifle, shot and killed two of the sailors, and fled. Later that day he surrendered to the police and consented to the search of the trunk of his automobile where the murder weapon was found.

At the trial which followed, the crux of the defense was that defendant was not guilty by reason of insanity. In aid of that defense a neuropsychiatrist testified that defendant on the morning of October 6, 1967 was laboring under such a defective reason from disease of mind as not to realize either the nature and quality of his actions or that what he was doing was wrong; and that his will power was so grossly impaired that he did not appreciate the criminality of his action and was unable to conform his behavior to the law. Obviously this testimony was directed toward permitting verdicts of not guilty by reason of insanity under either the *M'Naghten* rule, 8 Eng. Rep. 718 or the rule in *Durham* v. *United States*, 214 F.2d 862 (D.C. Cir. 1954).

The next witness called by defendant was Dr. Roger Alan Richardson. He is a psychologist who received a Bachelor's Degree from Colby College in 1960 where he majored in psychology and who three years later earned

a Master's Degree in clinical psychology from the University of Maine. An internship of an undisclosed nature at the same University followed and then he attended Louisiana State University where he was awarded a degree in psychology in 1967. The record does not disclose whether that degree was a doctorate, or, if so, whether in clinical psychology as distinguished from some other kind of psychology. Since then, he has been practicing his profession in this state, and presently he is a clinical assistant professor at the University of Rhode Island, the coordinator of the psychological services at the Rhode Island Medical Center, a consultant at various clinics, and a teacher of abnormal psychology at the extension service of the University of Rhode Island.

In April of 1968 while defendant was confined at the Adult Correctional Institutions awaiting trial, Dr. Richardson visited him professionally at the request of the psychiatrist to whose testimony we have already alluded. After administering the Rorschach, Tat, and Wais tests, he psychodiagnostically evaluated defendant as a basically insecure person who suffered from a great sense of inadequacy and was fearful that other people would learn of his inadequacies. The witness's ultimate diagnosis was that defendant was a "* * * paranoid individual, one who relies heavily on projection in helping him get along in life, and which under a given set of circumstances could very well distort his perception of reality. He wouldn't be able to judge rationally."

With the foregoing as a general background Dr. Richardson was then asked a hypothetical question which concluded with a request for his opinion as to whether defendant at the time of the killings "* * * was laboring under such a defective [sic] reason from the disease of the mind * * *." At that point, the transcript shows that the question was objected to substantially on the ground

that a psychologist is not qualified as a question of law to venture an opinion on whether an accused in a criminal case is suffering from a mental disease or a mental defect. The trial justice sustained the objection.

Obviously the hypothetical question as quoted is incomplete and defective in form. Both in the Superior Court and in this court, however, its defect as well as its incompleteness were ignored, and the question was considered by both the state and defendant as though it read in substance "Was the defendant laboring under such a defect of reason from disease of the mind as not to know the nature and quality of the act he was doing and as not to know that what he was doing was wrong." Perhaps in fact this was the form of the question when it was propounded and the omissions resulted because the prosecutor's interposition of an objection interfered with the court stenographer's ability to hear and record all that was included. In any event, we consider the transcript as though it were corrected to indicate that the question in the form assumed was that upon which the trial justice ruled.

Viewed in the light of a corrected record the cases squarely present and have been briefed and argued as if the only issue were the competency of a psychologist to assess, to evaluate and more particularly to give expert testimony on whether a person is suffering from a mental disease or a mental defect. On that issue the courts are divided.

One view is that mental illness is a medical problem which has both biological and psychological components; that despite the advances in the medical sciences generally, it is a matter not yet susceptible of precise determination; and that psychologists who lack medical degrees are not qualified to testify concerning the existence of mental disease and whether it has a connective relationship to criminal behavior. This is the position of the dissenting justices in *Jenkins* v. *United States*, 307 F.2d 637, 651

(D. C. Cir. 1962). In their judgment the issue of mental illness is "* * * nebulous and uncertain * * * even to those of the *medical* profession who are experienced and trained in its diagnosis and treatment" and is so debatable among professional medical experts that it would be

"* * * sheer folly * * * to attribute to a lay psychologist, who admittedly is not a doctor of medicine, such presumptive medical knowledge and diagnostic acuity as to entitle him to wear in a criminal courtroom the badge of an expert witness with respect to the existence of the elusive *medical* condition known as mental disease or defect." *Id.* at 651-52.

This may be referred to as the restrictive view, and it is, of course, true that even the courts which adhere to it will usually permit a psychologist to contribute to a trial either by testifying himself concerning the results of psychological tests or by furnishing a psychiatrist with those results so that he may be in a better position to express an opinion in court as to whether a person by reason of a mental defect should be considered legally insane. Those courts will not, however, permit a psychologist to render an expert opinion on whether a person's criminal conduct was in any way attributable to mental illness. This is an area they reserve to a doctor of medicine, for in their judgment only one trained and experienced in that discipline will have the expertise necessary to enlighten a jury on that subject. *Dobbs* v. *State,* 191 Ark. 236, 85 S. W.2d 694 (*dictum*); *State* v. *Alexander,* 252 La. 564, 211 So.2d 650; *Saul* v. *State,* 6 Md. App. 540, 252 A.2d 282; *State* v. *Gibson,* 15 N. J. 384, 105 A.2d 1.

Under the other view the lack of a medical degree, although undoubtedly meriting consideration on the weight to be given to his testimony, will not automatically disqualify a psychologist from rendering expert testimony in the field of mental disorder. Instead his competence as an expert in that field will depend in each case upon the

nature, the scope and the extent of the particular psychologist's education, training, experience and knowledge. Some obviously will be found lacking as, for example, those who fill administrative roles or who teach or engage in research in areas unrelated to the diagnosis and treatment of mental illness. Others who are clinical psychologists may be treated differently. In the final analysis competence to give an expert opinion on sanity will depend on the facts of the particular case, the question propounded, the skills of the witness and whether in the light of those considerations it appears that his expert opinion will be likely to aid the triers of fact in their search for the truth. This view is representative of the current trend of the authorities and is the one we adopt. *Jenkins* v. *United States,* 307 F.2d 637 (D.C. Cir. 1962); *Hidden* v. *Mutual Life Ins. Co.,* 217 F.2d 818, 821 (4th Cir. 1954); *People* v. *Davis,* 62 Cal.2d 791, 402 P.2d 142; *People* v. *Hawthorne,* 293 Mich. 15, 22-26, 291 N. W. 205, 208-09 (*dictum*); *State* v. *Padilla,* 66 N. M. 289, 347 P.2d 312 (*dictum*); *Rollins* v. *Commonwealth,* 207 Va. 575, 151 S. E.2d 622. See generally annot. 78 A.L.R.2d 919; Lassen, *The Psychologist as an Expert Witness in Assessing Mental Disease or Defect,* 50 A.B.A.J. 239; Louisell, *The Psychologist In Today's Legal World,* 39 Minn. L. Rev. 235.

We do not attempt in this opinion to delineate precise guidelines for determining what will qualify a particular psychologist to testify as an expert witness. Instead we leave that determination, as we generally do on questions of a witness's expertise, to the sound judicial discretion of the trial justice. *State* v. *Gregoire,* 88 R. I. 401 at 406-07, 148 A.2d 751 at 753; *State* v. *Smith,* 70 R. I. 500, 511, 41 A.2d 153, 158; *State* v. *Prescott,* 70 R. I. 403, 414-15, 40 A.2d 721, 727.

By way of guidance, however, we suggest that a Ph.D. in clinical psychology will ordinarily qualify a psychologist,

if he also is a diplomate of the American Board of Examiners in Professional Psychology and if the postdoctoral experience required for certification included substantial experience in a hospital or clinical setting in association with psychiatrists or neurologists. *Jenkins* v. *United States, supra* at 645 (Majority opinion).[1]

When we relate these general principles to the facts in this case it becomes obvious that it was error for the trial justice to exclude Dr. Richardson's testimony on the sanity issue solely on the ground that a psychologist is not qualified to answer as a matter of law questions concerning the *M'Naghten* or *Durham* rules and their application to an accused defendant's responsibility for his unlawful acts.[2] In addition, it is clear that the evidence could not have come in even if the trial justice had followed the correct rule inasmuch as the record fails to disclose that Dr. Richardson possessed qualifications which under any of the recognized standards would have permitted him to testify on the critical question.

Our conclusion that the evidence excluded on a faulty

---

[1] For the kinds of questions which may be asked to qualify a psychologist see the concurring opinion of Judge Burger (now Chief Justice of the United States) in *Jenkins, supra* at 647-51. And in *State* v. *Padilla, supra* at 298-99, 347 P.2d at 318, the court said that usually a psychologist qualifies if

"* * * he has had at least five years of post-graduate training in clinical psychology, has a degree of doctor of philosophy and has spent at least one year as a psychology interne in a mental hospital approved by the American Psychological Association."

*See also* Goulett, *The Insanity Defense in Criminal Trials,* §108, at 146 through 148.

[2] After the ruling excluding Dr. Richardson's testimony, the offer of proof was that the witness, if permitted to answer would have responded that defendant on October 6, 1967, was laboring under such a defect of reason from a disease of his mind as to be unable to distinguish right from wrong and to judge adequately as to his action or to evaluate the situation rationally. He would also have testified that defendant could neither premeditate nor deliberate and that he was operating under plain psychotic assumptions.

ground could have been barred for a valid reason would in ordinary circumstances dispense with the need for any further discussion for it is settled that a specific objection to a question which is upheld, even though based upon an unsupportable ground, will be sustained on appeal if the answer could have been excluded upon some other tenable ground. *Bruce* v. *State*, 93 R. I. 466, 470, 176 A.2d 846, 848; 1 Wigmore, *Evidence* §18, at 342 (3d ed.).

These cases, however, are extraordinary rather than ordinary. Here the only defense to the two murder indictments was insanity. On that issue Dr. Richardson's testimony was critical, and it is reasonable to say that such testimony, even though it may have mirrored that of the psychiatrist who preceded him on the witness stand, might have persuaded the jury. Perhaps it is because of the trial justice's rejection of that testimony that defendant now stands convicted of two charges of first degree murder and is under sentences of life imprisonment.

Moreover, Dr. Richardson's testimony was excluded solely because its source was a psychologist rather than because the particular psychologist who would have voiced it lacked the necessary qualifications. Had the objection to permitting his response to the critical question been predicated on the latter ground then, perhaps, defendant, aware of the problem, could have adduced sufficiently detailed evidence of the witness's expertise to satisfy the trial justice that he was properly qualified and in that event the evidence would have been admitted.

Having in mind the foregoing circumstances, it appears to us that the interests of justice will not suffer if an opportunity is afforded to establish that Dr. Richardson was *at the time of the trial* properly qualified to give an opinion on whether or not on October 6, 1967, defendant was laboring under such a defective reason from disease of the mind as not to be responsible for his criminal actions. To afford

defendant that opportunity does not necessarily mean that he will in the first instance receive new trials.[3] Whether or not he gains that right will depend upon what the testimony is as to Dr. Richardson's qualifications. All that is required at this juncture of these proceedings is that there be a hearing on what those qualifications were and only if it is then determined that he possessed the required expertise will there be any necessity for new trials. If it is found otherwise then, of course, that will be the end of the cases.

Accordingly we remit the cases to the Superior Court for a hearing on Dr. Richardson's qualifications. If that court on a *nunc pro tunc* basis finds that he was qualified at the time he testified, defendant's convictions must be vacated and he must be given a new trial in each case. If, however, it should be found that Dr. Richardson lacked the qualifications necessary to express an opinion, then the Superior Court should take no further action and the convictions will automatically be sustained, subject, however, to defendant's right to prosecute a further bill of exceptions limited to the question of whether the trial justice abused his discretion in rejecting Dr. Richardson's qualifications as an expert.

The cases are remitted to the Superior Court for further proceedings consistent with this opinion.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, for plaintiff.

*James Cardono,* Public Defender, *Eugene F. Toro,* Asst. Public Defender, for defendant.

---

[3]For a comparable view under entirely different circumstances see, *Knott* v. *Langlois,* 102 R. I. 517, 231 A.2d 767, where we said that an unqualified new trial at the initial stage would be "drastic relief." See also *State* v. *Carufel,* 106 R. I. 739, 263 A.2d 686.