Argued May 31, reversed and remanded for
a new trial August 20, reconsideration denied
September 25, petition for review denied
October 16, 1979

STATE OF OREGON,
*Respondent,*

*v.*

JOSE ANGEL GASTELUM,
*Appellant.*

(No. C77-10-14627, CA 10255)

599 P2d 1169

Phillip M. Margolin, Portland, argued the cause and filed the brief for appellant.

James M. Brown, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton, Buttler and Joseph, Judges, and Peterson, Judge Pro Tempore.

[491]

BUTTLER, J.

## BUTTLER, J.

Defendant appeals from his convictions of murder and attempted murder, ORS 163.115, under a two count indictment. His principal contention is that the trial court erred in permitting a detective who investigated the crimes to express his opinion that two other suspects did not fire the gun. We agree and reverse and remand for a new trial.

The charges against the defendant arose out of a series of brawls, with a shifting cast of characters, which took place between and among a large group of Spanish-Americans and Anglo-Americans in the parking lot of a Portland tavern in October of 1977. During the course of the numerous fights that took place that evening, a gun was fired, resulting in the death of one person and the wounding of another. Three witnesses for the state identified defendant as the person who fired the gun. Other witnesses for the state were not certain who did the shooting and one of the witnesses testified that the flash from the gun came not from the defendant but from the gap between the defendant and the person standing next to him. Among the witnesses who identified the defendant as the one who fired the gun, there were inconsistencies in the descriptions given to the police and whether the person who fired the shot (or shots) was holding the gun in his right hand or his left hand. Several witnesses for the defense testified that the defendant did not do the shooting; one witness stated that he was watching the defendant during the time that the shooting took place and did not see him fire a gun. In addition, some witnesses said they heard one shot while others testified they heard two shots.

One of the theories put forth by the defense was that the gun was fired by somebody who was standing behind the defendant, and there was evidence in support of that theory. As the trial evolved, evidence was presented which raised the possibility that one of the two Mosqueda brothers, who were involved in the

brawl, was that person. However, that theory was effectively destroyed when the court admitted, over proper objection, the following testimony from a police detective, who had investigated the incident:

[The prosecutor] "Q. During the course of your investigation, did you come across the names of Alberto and Geraldo Mosqueda?

"A. Yes, I did.

"Q. Did you make contact with those two individuals?

"A. Yes, I have.

"Q. And did you have an occasion to discuss this incident with them in detail?

"A. Yes, I discussed it with them.

"Q. And did you make any determination as to whether or not they were involved?

"MR. TORAN: I object. It calls for an opinion of the witness, and conclusions.

"THE COURT: It's all right. He's a police officer. He's supposed to go out, dig up suspects. It's all right.

"Overruled. He can give his opinion. Go ahead.

"THE WITNESS: In talking with both the individuals, it was my opinion that they were there, that they were probably involved with the fight, but not involved with the shooting.

"Q. (By Mr. Davis) Was that determination made after in-depth interviewing sessions with those two individuals?

"A. I interviewed both of them, yes.

"Q. And from other information you had obtained from other sources?

"A. That is correct."

ORS 44.060 provides that "[a] witness can testify of those facts only which he knows of his own knowledge, that is, which are derived from his own perceptions * * *." While there are exceptions to the rule, such as that which permits an expert witness to express his opinion, the subject of this testimony is not a proper one for expert opinion.

"The factor which determines if a subject is a proper one for expert testimony is whether the

[494]

answer of an expert can be of appreciable help to the jury. *Sandow v. Weyerhaeuser Co.,* 252 Or 377, 380, 449 P2d 426 (1969). It depends upon whether the subject is such that the expertise of the witness gives him a special insight superior to that of the average juror. * * *

"'* * * *[W]herever inferences and conclusions can be drawn by the jury as well as by the witness,* the witness is superfluous; and [that] thus an expert's opinion is received because and whenever his skill is greater than the jury's, * * *.' (Emphasis theirs.) 7 Wigmore on Evidence at 10." *Koch v. Southern Pacific Co.,* 266 Or 335, 341-42, 513 P2d 770 (1973), 274 Or 499, 547 P2d 589 (1976).

The question here is not which gun was fired (no gun was found), but rather who fired a gun. The jury is just as well-equipped as the officer to draw a conclusion from facts adduced at the trial. Accordingly, opinion evidence on this issue was not admissible. Its admission here had the effect of usurping the function of the jury. The question remains, however, whether the error was harmless.

The state contends that the testimony was harmless because it was not prejudicial. First, it contends that the defendant opened the door to inquiry of the involvement of the Mosqueda brothers in cross-examining a prior witness. That contention misses the point: that fact would permit the state to offer evidence tending to eliminate those persons as the culprit, but has no effect on the character of the evidence offered. Second, the state contends that the detective's statement of opinion was adopted, as a practical matter, by the defendant's later testimony in which he stated that he saw the man who did the shooting and gave a rough description of him, which description did not match either of the Mosqueda brothers. However, defendant testified that he was not certain of the description because the lights which illuminated the parking lot were shining in his eyes. Other witnesses testified to the same visibility problem.

Defendant testified that he did not fire the gun; someone else did. While he could not describe accurately the person who did so, he said he saw the other person fire it. Other evidence tended to implicate one of the Mosqueda brothers, and to say, as the state contends, that defendant agrees with the officer's opinion that neither of the brothers fired the gun does not make sense.

We cannot say that the error was harmless. Given the confusion which existed at the time of the shooting and the expectable contradictory testimony as to what happened and who shot the gun, permitting a police detective who is likely, in the eyes of the jury, to have an aura of authority about him to express his opinion that alternative suspects did not do the shooting might have eliminated a reasonable doubt which defendant was entitled to have the jury consider in deciding his guilt or innocence.

Reversed and remanded for a new trial.