HULS, J.
Appellant was convicted and sentenced on two counts of practicing medicine without a license on two different dates in violation of Business and Professions Code section 2141.
He did not have a valid, unrevoked certificate issued by the Board of Medical Examiners pursuant to the Medical Practice Act in the Business and Professions Code. The pertinent elements of the offense proscribed by section 2141 are: practicing or attempting to do so, or advertising or a holding out as practicing, any system or mode of treating the sick or afflicted, or diagnosing, treating, or prescribing for any ailment, disease, disorder, or other mental or physical condition of any person.
The judgment is supported by the evidence that appellant so practiced, so held himself out, so diagnosed, so treated for ailments, diseases, disorders, or other mental or physical conditions of two persons. He advertised, as Director of the National Hypnosis Institute in Los Angeles, the values, benefits and results of “Hypnosis and Self Hypnosis,” “Hypnosis helps lose weight . . . relax . . .,” “Learn Self Hypnosis .. . improve . . . nerves & bad habits,” “The Professional Hypnotist is a skilled workman. His tool is Hypnosis . . .” and the advertisement invited phone calls and investigation by readers (People’s Ex. 2).
In telephone conversations between appellant and one female prosecution witness who told appellant she was overweight, appellant said he could help her and would send her his brochure, that he guaranteed results and that he would *Supp. 846 hypnotize her; in his office, appellant repeated to her that he could help her, that he had no failures, he had cured bed wetting by a child, he could and did relieve cancer pain; for an eye pain of this witness, appellant attempted to hypnotize her; then he prescribed self-hypnosis and gave her a typed paper to teach her to relax and hypnotize herself, on her second visit he told her he could make her lose 20 to 30 pounds, from 10 to 15 in one week; he asked her if she had any bad habits or" any serious illnesses; the witness paid for seven visits; he told her he was not a doctor; he put his hands on her for relaxation; while she was supposed to be under hypnosis, he touched the back of her head and rubbed around there and then over her eyes and forehead; he gave her no medicine but did give her a doughnut; and told her that she would be more sociable, more outward by his hypnosis; that to repeat that she would not overeat, with which she complied; the other prosecution witness over the phone told him she was terribly nervous, had a great pain in the back of her head and in answer to her question if he could cure her, he said he could overcome the condition, then said she had a tension headache; he told her he would cure her; at his office the witness complained of the head pain, to which appellant said “This is a migraine headache this time”; that he could make her well; he put his hand on the back of her head and asked her if she could feel the pain go away, to which she replied “yes”; he said he would make her well; he would help her; he put her in a chair and told her to relax and gave her a typed paper of instructions for self-hypnosis (People’s Ex. 3); he had her repeat the phrases there, and at a certain count by him she would awake “refreshed, relaxed, confident, and the pain in your head will be gone”; later he stated he would go to another room and give her a hypnotic or telepathic suggestion, and that she would go into a deep trance, from which she would awaken feeling “refreshed, relaxed” and all the things she referred to before; she paid appellant for this visit. (People’s Ex. 4.)
From all the evidence, it is apparent that appellant “advertised.,” held himself out as practicing and practiced and attempted to practice a system or mode of treating the sick or afflicted, that he diagnosed, treated “an ailment, disease or disorder or other mental or physical condition” within the purview of the statute.
• In yiew of the evidence cited above we do not need to decide whether appellant “prescribed,” a word which Sevier v. Riley *Supp. 847 (1926) 198 Cal. 170, 175 [244 P. 323] stated meant “to lay-down authoritatively as a guide, direction or rule; to dictate; to appoint; to direct; to give as a guide, direction or rule of action.”
Diagnosis is defined in Business and Professions Code section 2013 in chapter 5 in which section 2141 is located, as: “Whenever the words ‘diagnose’ or ‘diagnosis’ are used in this chapter, they shall include any undertaking by any method, device or procedure whatsoever, and whether gratuitous or not, to ascertain or establish whether or not a person is suffering from any physical, mental or nervous disorder. ’ ’
“ The word ‘diagnosis’ has an established legal meaning. It is the recognition of a disease from its symptoms; it is a part of the practise of the healing art. Diagnoses may only be made by proficient persons, authorized by the state. (People v. Jordan, 172 Cal. 391 [156 P. 451]).” Maranville v. State Board of Equalization (1950) 99 Cal.App.2d 841, 844 [222 P.2d 898]. Diagnose is defined by Stedman’s Medical Dictionary (18th ed. 1953) page 381: “To determine the nature of a disease; to make a diagnosis,” and “diagnosis” is “The determination of the nature of a disease. . . .” “Disease” is defined as “illness, sickness . . ., or an abnormal state of the body as a whole, continuing for a longer or shorter period.” (Id., p. 395.) “Obesity” is “An abnormal increase of fat in the subcutaneous connective tissues; corpulence . . ., fatness. ...” (Id., p. 953.) “Nervous” is defined “1. Relating to a nerve or the nerves. 2. Easily excited or agitated; suffering from instability or weakness of nerve action.” (Id., p. 928.)
In one instance treatment by manipulation, which when applied to one suffering was held unlawful without a license, the court referring to treatment, “in its well-understood signification” as “the application of some supposed curative agency to the person seeking relief” (People v. Ratledge (1916) 172 Cal. 401, 403, 405 [156 P. 455]; see People v. Cosper (1926) 76 Cal.App. 597, 599 [245 P. 466]) for treatment by manipulation and prayer, where at page 600 we find in that case that the use of prayer was said to be a mere subterfuge to escape the prohibitory provisions of the Medical Act. In re Maki (1943) 56 Cal.App.2d 635, 644 [133 P.2d 64], holding that “Neither the operation of a massage parlor nor the administering of a massage for remedial or hygienic purposes is the practice of medicine,” and designating it as a “homely remedy” is not conclusive in our situation.
*Supp. 848 It would appear that the determination there applied to an ordinance dealing with massage parlors not, as here,' to one who used his hands either in manipulating portions of the body, or massaging them, together with the aid of his hypnotism, to cure or relieve a certain or even feigned disorder or ailment.
In State ex rel. Bierring v. Robinson (1945) 236 Iowa 752 [19 N.W.2d 214], the treatment consisted of a “thought” healer’s use of a light touch of his fingertips upon the person’s head or neck which felt like some pressure where there was a tender spot. That court held the case almost indistinguishable from State v. Hughey (1929) 208 Iowa 842 [226 N.W. 371, 373], and stated at 19 N.W.2d 216: “In both cases the treatment consisted of ‘laying on the hands’ and both defendants circulated cards wherein they professed to be healers.” Further, at page 216, quoting from the Hughey case: “Under this statute one who publicly professes to be a physician, and induces others to seek his aid as such, is practicing medicine. Nor is it requisite that he shall profess in terms to be a physician. It is enough under the statute if he publicly profess to assume the duties incident to the practice of medicine. . . . Manifestly the first duty of a physician to his patient is to diagnose his ailment. Manifestly, also, a duty follows to prescribe the proper treatment therefor. If, therefore, one publicly profess to be able to diagnose human ailments, and to prescribe proper treatments therefor, then he is engaged in the practice of medicine. ...” The witness in the Hughey case had testified as to the healer: “He just laid his hands on me; the tumor left; flushed away. ’ ’ This is greatly similar to appellant’s laying on of hands in the case before us with the result that the headache and eye pain vanished.
That appellant said he did not profess to be a doctor is not conclusive, since a violation of the Medical Practice Act is not absolved by a concurrent statement that the violator is not a doctor. People v. Bard (1948) L. A. Appellate Dept., Crim. A. No. 2423.
Diagnosing, prescribing and treating, are constituent facts of the practice of medicine, People v. T. Wah Hing (1926) 79 Cal.App. 286, 290 [249 P. 229].
Simple remedial acts and recommendations by a practitioner relating to and forming a part of a patient’s treatment in the doing of an act beyond the former’s lawful authority, may be considered together in arriving at the conclusion that they constituted a violation of law. Cooper *Supp. 849 v. State Board of Medical Examiners (1950) 35 Cal.2d 242, 251 [217 P.2d 630, 18 A.L.R.2d 593].
With respect to the alternative nature of the language of section 2141 differentiating between practicing or attempting to do so, or advertising or so holding himself out, or diagnosing, treating or prescribing, it has been said in People v. Saunders (1923) 61 Cal.App. 341, 344 [215 P. 120] : “It is at once apparent from this language that the legislature intended to denounce the act of anyone who, not having a license, might diagnose without treating or prescribing, or who might treat or prescribe without diagnosing. ’ ’
We conclude that the evidence sufficiently supports the judgment that appellant was advertising, diagnosing and treating, although advertising or diagnosing or treating or a combination of any two of such actions would be sufficient to support the judgment.
Coming to the question of first impression, i.e. whether practicing hypnotism is practicing medicine, the only ease found on the precise point is that of Masters v. State (1960) - Tex. Crim. App.- [341 S.W.2d 938], which is greatly similar to our case. Masters was charged with having unlawfully practiced medicine. He had advertised as to the benefits of hypnosis. After inquiring of a person who came to his office in response thereto, after having questioned that person as to his health and other problems, Masters told him that by the use of hypnotherapy he could cause that person’s headaches to diminish and be alleviated; he placed him in a chair, told him to relax, and to go into a trance, which the person pretended to do, although fully conscious all the time. In construing a statute similar to ours, the court said at page 941 [341 S.W.2d] : “It is clear from the record in this case that appellant offered to treat a physical or mental disorder by a system or method and to effect a cure therefor, and that he charged money for his services; and so we hold the evidence to be sufficient to support this conviction. See Journal of Criminal Law, Criminology, and Police Science, Vol. 46, No. 3, p. 333.”
Of interest is People v. Busch (1961) 56 Cal.2d 868, 877-878 [16 Cal.Rptr. 898, 366 P.2d 314]. The court said at p. 877: ‘ ‘ Opinions based on hypnotic analysis have never been received in the courts of this state, or in any other jurisdiction to which defendant refers.” There “offered opinion testimony based on the use of hypnosis” (p. 878) was properly rejected by the trial court. The witness “had *Supp. 850 engaged in the practice of medicine as a general practitioner until shortly before his appearance in the case at bar as an expert specializing in hypnosis.” It is true that the Supreme Court relied on the general rule that “the trial court, in passing upon the qualification of a witness offered as an expert, has wide discretion, and an appellate court will not disturb its ruling in the absence of a manifest abuse of such discretion.” It is also true that the court stated: (p. 878) “We are persuaded that under the circumstances herein narrated the trial judge did not act unreasonably in his determination that a proper foundation was not established as to the reliability of an analytical tool still seeking recognition in the field of psychiatry, or as to the qualifications of this particular witness to give an opinion on the state of mind of the accused. ...” (Emphasis ours.)
If the use of hypnotism has not been established as a reliable analytical tool but is still seeking recognition in the field of psychiatry, inferentially at least, the practice of hypnotism in itself, by one not licensed, is not recognized as a lawful practice of the healing art. It has not been expressly so recognized by the Legislature; nor has the Legislature expressly provided for the licensing of psychiatrists, although physical therapists must qualify by taking courses from instructors qualified among other studies in psychiatry. Business and Professions Code section 2680. In Cornell v. Superior Court (1959) 52 Cal.2d 99, 103 [338 P.2d 447, 72 A.L.R.2d 1116], we read: “The use of hypnotism for the purpose desired is recognized by medical authorities. (Encyclopedia Britannica, 1954 edition, vol. 12, pp. 22-24.) This being so, the rationale of the Ochse case [38 Cal.2d 230 (238 P.2d 561) ] is applicable. There is no substantial legal difference between the right to use a hypnotist in an attempt to probe into the client’s subconscious recollection, and the use of a psychiatrist to determine sanity.”
It is our considered opinion that, in the light of the record in this case, the practice of hypnotism as a curative measure or mode of procedure by one not licensed to practice medicine, amounts to the unlawful practice of medicine. While it may be that one day the use of hypnotism may be recognized sufficiently to warrant the Legislature to license that practice, to date it has not done so. To the extent that appellant employed or attempted to practice his hypnotic powers, he was practicing medicine within the meaning of section 2141.
*Supp. 851 The “purpose desired” in Cornell v. Superior Court, supra, was to permit counsel properly to prepare for trial by delving expertly into the matter of the sanity of his client. Hypnosis being recognized for that purpose, its use would fall within the prohibitory unlicensed use of “any system or mode of treating the sick or afflicted,” or any diagnosis of “any ailment, . . . disease, . . ., disorder, . . ., or other mental or physical condition of any person. ’ ’
In appellant’s closing brief, he argues the witness, an employee of the State Board of Medical Examiners, in her efforts to obtain an affirmative answer from him in response to her questions as to whether he could cure her, in which his answers were “You can count on me,” and “yes,” showed a clear ease of entrapment. This he argued before the trial court (Tr., vol. II, pp. 2-3) but then at page 3 his counsel stated: “I was not setting it up as an absolute defense ... I just offered that as proof of the method by which the operator worked. ’ ’
Even if counsel had argued that it was a defense, we cannot agree that the record showed entrapment. “. . . entrapment presupposes the commission of the crime alleged and one who denies commission of the crime cannot be heard to say that he was entrapped into doing it after it is proved on him.” (Cases cited.) People v. Polsalski (1960) 181 Cal.App.2d 795, 801 [5 Cal.Rptr. 762], Appellant herein, having denied he committed the crime, cannot successfully argue that he was entrapped. In addition, since appellant advertised hypnotism and practiced hypnotism on two persons who were witnesses, it was in the line of his regular business; he was caught but not entrapped. (People v. Schubin (1958) 166 Cal.App.2d 267, 270-271 [332 P.2d 737].)
In his grounds of appeal, appellant states that section 2141 “on its face and as construed and as applied to the appellant by the trial court . . . creates vague and ambiguous standards of guilt” resulting in the deprivation of his liberty and property without due process of law and denial of equal protection of the law in violation of the California and United States Constitutions. He does not argue these points in his opening brief, but in response to respondent’s having argued the point on vagueness, appellant then argues that point only and but mildly in his closing brief.
As against an attack for vagueness, the Chiropractic Act providing for suspension or revocation of a practitioner’s *Supp. 852 license for advertising that he would treat certain designated sexual disorder or diseases, was held to be a constitutional enactment. In Jacobsen v. Board of Chiropractic Examiners (1959) 169 Cal.App.2d 389 [337 P.2d 233], the court stated at page 394: “But a statute attacked for vagueness will be upheld if its terms may be reasonably certain by reference to its legislative purpose. ... We think people of common intelligence would have no trouble in understanding what was proscribed.” In People v. Mangiagli (1950) 97 Cal.App.2d Supp. 935, 937, 943 [218 P.2d 1025], the complaint in the language of section 2141, the legislation here under attack, was upheld as against the charge that it was too vague and uncertain. The court stated at page 937: “It is in the words of the statute describing the offense, and must therefore be regarded as sufficient. (Pen. Code, § 1426; People v. Saffell (1946) 74 Cal.App.2d Supp. 967, 973-7 [168 P.2d 497].” If the words of the statute set forth in a pleading are sufficient to permit an ordinary person to understand what he is being charged with, it is difficult to ascertain how those same words of the statute itself could be held to be vague and uncertain, so as to make it impossible for a defendant properly to defend himself.
We find no vagueness or uncertainty in the words of section 2141; the argument of its unconstitutionality on that ground must fall. Appellant has not argued unequal enforcement and the entire record reveals that no evidence relative thereto was offered or received; the argument on this ground is specious.
The entire record discloses no insufficiency of the evidence; it is our opinion that the evidence amply supports the judgment. In this regard, in addition to what has been said above, the remarks of the trial judge before rendering judgment are not only not inconsistent with our opinion but wholly in support of its judgment. There was no entrapment. Section 2141 is constitutional, and there was no evidence that it was unconstitutionally applied or enforced.
The judgment is affirmed.
Swain, P. J., concurred.