422 P.2d 172

**STATE of Arizona, Appellee,**

v.

**Floyd Francis HORN, Appellant.**

**No. I CA–CR 48.**

Court of Appeals of Arizona.

Dec. 30, 1966.

Rehearing Denied March 2, 1967.

Review Denied March 28, 1967.

Darrell F. Smith, Atty. Gen., by John V. Riggs, Asst. Atty. Gen., for appellee.

McGillicuddy, Johnson & Rich, by Chris T. Johnson, Phoenix, for appellant.

J. THOMAS BROOKS, Judge of Superior Court.

Floyd Francis Horn, hereinafter referred to as defendant, was charged by information in the Superior Court of Maricopa County with the crime of practicing medicine without a license, in violation of A.R.S. § 32–1401 and A.R.S. § 32–1455, as amended. The defendant appeals from the judgment of conviction and order denying a new trial.

The facts and circumstances considered most favorably in support of the verdict are as follows:

Several days prior to April 1, 1964, at the request of an inspector for the United States Food and Drug Administration, one Ruth Glover called the defendant on the telephone, in Phoenix, and advised him that she was concerned about her health and feared that she might have cancer. She told the defendant that she had recently undergone surgery for the removal of a tumor from her thyroid gland, and although the doctors had assured her that she did not have cancer, she did not believe them.

The defendant assured Mrs. Glover that he could help her and an appointment was arranged for April 1st in Mrs. Glover's home.

During the meeting of April 1st, defendant advised Mrs. Glover that she was suffering from both cancer of the throat and chest.

He exhibited a box containing twelve bottles of pills and told her that she could be cured with these minerals and that the cost of the treatment would be the sum of $330.00. Mrs. Glover was to call as soon as she was able to obtain the money and that particular interview was terminated.

On April 9, 1964, Mrs. Glover again telephoned the defendant and advised him that she had secured the money and requested that he again come to her home and bring his medicine.

The defendant arrived at Mrs. Glover's home on the evening of April 9th, at which time he examined her neck and told her that she was suffering from skin cancer. He stated that he could cure this particular cancer with his "number five or number six mineral", together with some vanishing cream.

Mrs. Glover thereupon handed the defendant $330.00 in cash, at which time he advised her that this amount would enable him to cure the cancer on her throat, but that an additional sum of $330.00 would be needed to cure the chest cancer. He then gave Mrs. Glover some pills which she pretended to swallow. At this point, several police officers who had overheard the conversations from an adjoining room appeared and placed the defendant under

arrest for practicing medicine without a license.

Tape recordings of defendant's various interviews and telephone conversations with Mrs. Glover were admitted into evidence at the time of the trial. The defendant does not question on appeal the admissibility of this evidence nor is the question of entrapment presented to this Court for consideration. We, therefore, do not consider these issues in this opinion.

The recordings, together with other testimony, revealed that the defendant made numerous statements and representations to Mrs. Glover concerning her physical condition and his ability to alleviate same. He stated that he sold "Schuessler's twelve minerals" which were tissue builders; that these minerals could control the growth of every cell in the body; that a doctor in Seattle, Washington, had been able to cure hundreds of cases of cancer with mineral pills but that the defendant was able to effect cures in one-third the time.

The defendant further stated that he could empty out any hospital of cancer patients within thirty days; that the "number five mineral" together with cold cream could dry up and kill a cancer.

The defendant had suggested to Mrs. Glover that she remain on a diet for two weeks, during which time she was to take nothing but prune juice and water. He stated that he planned to place her cancer in a state of dormancy, after which time his mineral pills would build up her body resistance and enable her to combat the disease. He indicated that a medical doctor might charge as much as $7,500.00 whereas he, the defendant, would only require the sum of $330.00. Mrs. Glover, of course, was only pretending to rely upon these representations for the purpose of assisting the law enforcement officers.

The evidence clearly established that defendant was not licensed to practice medicine nor any other branch of the healing arts, although he was in possession of a State and City License permitting him to sell vitamins and health foods.

The first question raised by defendant on appeal, is whether it was prejudicial for the court to admit statements made by him prior to the date of his arrest concerning other people who he had allegedly treated and cured.

This evidence was clearly competent as tending to establish the defendant's motive and common scheme or plan. State v. Hardin, 99 Ariz. 56, 406 P.2d 406 (1965).

The defendant next urges that there was insufficient evidence as a matter of law to sustain a conviction and, in this regard, he contends that he was not shown to have been practicing medicine as a business.

The applicable statutes provide as follows:

A.R.S. § 32–1401, as amended:

(7) "Practice of Medicine", which shall include the practice of medicine alone, the practice of surgery alone, or both, means the diagnosis, treatment or correction of, or the attempt to, or the holding of one-self out as being able to diagnose, treat or correct any and all human diseases, injuries, ailments or infirmities, whether physical or mental, organic or emotional, by any means, methods, devices or instrumentalities, except as the same may be among the acts or persons not affected by this chapter.

A.R.S. 32–1455, as amended, makes the practice of medicine by one not licensed or exempt from the requirement therefor guilty of a felony.

It is apparent that the statutes provide a penalty for any single or isolated act which constitutes the unlicensed practice of medicine. The provisions of A.R.S. § 32–1401 are in the disjunctive and the offense is therefore committed by a person who performs any one or more of the acts prescribed. Continuous or habitual acts of treatment are not essential in order to establish the unlicensed practice of medicine. A single isolated act may constitute the offense. People v. Friedman, 374 Ill. 212, 29 N.E.2d 89 (1940); State v. Lydon, 170 Wash. 354, 16 P.2d 848 (1932); Baldwin

v. District of Columbia (Mun.Ct.App.D.C.), 183 A.2d 566, 99 A.L.R.2d 651 (1962).

In Baldwin v. District of Columbia, supra, the court said:

"* * * Practicing medicine or surgery does not mean continued or habitual professional acts but, as the object of a restrictive statute is the protection of the public and as a member of the public is endangered by one act of an unqualified practitioner, so a single act may be practicing * * *

"* * * Each act of treatment constitutes a fresh menace, each repetition a new threat of the abuse which the statute was designed to prevent * * *"

Defendant argues that such an interpretation would mean that one could be found guilty of a felony who merely gave casual advice to a friend or member of his family or who rendered emergency medical assistance. In this regard, we point out that A.R.S. § 32–1421, as amended, specifically exempts persons who furnish emergency medical assistance as well as those who administer domestic family remedies. Further, the evidence clearly established that the acts of the defendant were not merely casual or friendly in nature, but purported to be of a professional character. See Territory of Hawaii v. Takamine, 21 Hawaii 465; 93 A.L.R.2d 129 (1913).

The defendant next urges that the evidence was insufficient to sustain the verdict in that the State failed to present expert testimony to establish that the acts of defendant constituted the practice of medicine.

Generally, there are two distinct classes of cases in which expert testimony is admissible, as is said in 20 Am.Jur. Evidence, Section 776, page 648:

"* * * In one class are those cases in which the conclusions to be drawn by the jury depend on the existence of facts which are not common knowledge and which are peculiarly within the knowledge of men whose experience or study enables them to speak with authority upon the subjects in question. In the other class are those cases in which the conclusions to be drawn from the facts stated, as well as knowledge of the facts themselves, depend on professional or scientific knowledge not within the range of ordinary training or intelligence."

We hold that laymen could have understood the facts as they were presented at the time of trial, together with the meaning of the terminology contained in the applicable statute. Expert testimony was not required.

Defendant has attempted to compare the situation here with that of a civil case involving medical malpractice wherein expert testimony is required to assist in establishing a standard of care with respect to diagnosis and treatment.

This rule, however, is subject to an exception when the alleged act or omission is within the realm of common knowledge which a layman would have no difficulty in recognizing. Revels v. Pohle, 101 Ariz. 208, 418 P.2d 364 (1966).

Defendant next contends that A.R.S. § 32–1401 is unconstitutional as being so vague and indefinite that it violates the due process and equal protection guarantees of the State and Federal constitutions. It is defendant's position that the statute does not define the meaning of the words "diagnosis" and "treatment" and that men of ordinary intelligence are therefore not sufficiently apprised of the conduct which the statute prohibits.

Our Supreme Court has previously set forth the criteria for determining whether or not a statute falls within that degree of vagueness which would render it unconstitutional. Even in criminal statutes, the language need not afford an interpretation approaching mathematical certainty. Brockmueller v. State, 86 Ariz. 82, 340 P.2d 992 (1959); State v. Jean, 98 Ariz. 375, 405 P.2d 808 (1965). The constitutionality of a statute similar to A.R.S. § 32–1401 was upheld as against the same objection raised here in Black v. MacMahon, 130 N.J.L. 323, 32

A.2d 716 (1943). Affirmed on appeal, 132 N.J.L. 171, 39 A.2d 135 (1944).

We hold that the terminology contained in A.R.S. § 32–1401 is neither vague nor uncertain. The conduct prohibited therein is sufficiently definite to apprise persons of ordinary intelligence of its meaning.

Defendant next assigns as error the failure of the court to instruct the jury as to the meaning of the words "cure" and "treatment". Defendant did not request instructions defining these terms and he therefore waived any right thereto. State v. Blankenship, 99 Ariz. 60, 406 P.2d 729 (1965); State v. Shepard, 1 Ariz.App. 585, 405 P.2d 895 (1965).

Defendant contends that the court erred in refusing his requested Instruction No. 6 which was as follows:

"You are instructed that diagnosis means the recognition of a disease from symptoms, made by a doctor or someone pretending to be a doctor, after examination, when the person receiving the examination is relying on the result and opinion of the person giving the examination."

The refusal to give this instruction did not constitute error. The word "diagnosis" has an established legal meaning. It is the act or art of recognizing the presence of disease from its symptoms. People v. Cantor, 198 Cal.App.2d Supp. 843, 18 Cal.Rptr. 363 (1961); Simon v. Hospital Service Association of Pittsburgh, 192 Pa. Super. 68, 159 A.2d 52 (1960). Defendant's Requested Instruction No. 6 is incorrect in assuming that the person receiving the examination must rely on the opinion of the person giving it. Further, diagnosis may be established by acts and conduct, as well as by representations to patients. People v. Parish, 59 Cal.App. 302, 210 P. 633 (1922).

Defendant next urges that the court committed reversible error in refusing to give Defendant's Requested Instruction No. 8, as follows:

"A diagnosis is that art of the act of determining the nature of a disease made by a physician after a consideration of all the manifestations of the desease, (sic) and after forming a conception of the disorder in terms of physiology, hence of the anatomic localization of the lesion, and, finally, by inference, of the pathologic process and its etiology."

This instruction was properly refused as being overly confusing and misleading. State v. Blankenship (1952), 137 W.Va. 1, 69 S.E.2d 398; State v. Wheeler (1950), 70 Idaho 455, 220 P.2d 687.

Defendant next complains of the court's failure to instruct the jury as follows:

"When a defendant has a license to sell minerals and vitamins from the State and City of Phoenix, and you find from the evidence that the defendant was acting within the confines of that license you shall find the defendant not guilty."

In effect, this instruction provides that the sale of vitamins and minerals could not constitute the practice of medicine under any circumstances.

In State v. Bresee, 137 Iowa 673, 114 N. W. 45, 47, 24 L.R.A.,N.S., 103 (1907), the defendant sold "Schuessler's Tissue Foods" as did defendant in the instant case. The Court said:

" * * * the fact that the appellant was careful to call the article which she supplied to the sick 'food,' instead of 'medicine,' is not at all decisive of the merits of the case. It is evident she was catering to the patronage of the sick who were asking relief from their ills, and, if she listened to their statements, assured them of her ability to help them, and supplied them with her alleged appropriate remedies giving instructions for their application or use, this would seem to come within the definition given by the court, as well as within the ordinary and usual signification attached to the words 'prescribing' or 'prescribing and furnishing medicines,' as they are commonly used and understood. Medicine as defined by Webster is 'any substance administered in

the treatment of disease; a remedial agent; a remedy.' *The fact that the substance so employed as a remedial agent may have value as a food, and have a tendency to build up and restore wasted or diseased tissue, will not deprive it of its character as a medicine if it be administered and employed for that purpose.*" See also 17 Am.Jur. Drugs and Druggists, § 6, p. 511. (Emphasis supplied.)

 Finally, defendant urges that the court erred in refusing defendant's Requested Instruction No. 5, as follows:

"You are instructed that if you find that there were treatments given to the complaining witness, but that the treatments given to the complaining witness were, in fact, treatments by religion, you should find the defendant not guilty."

In support of this instruction, defendant refers to his testimony that the curing of pain by him is a "godly power". Defendant cites A.R.S. Sec. 32–1421(3) which provides that the licensing provisions of the medical practices act shall not inhibit or apply to "the practice of religion or treatment by prayer exclusively."

The evidence clearly indicated that the defendant did not attempt to effect his cures by the practice of religion *exclusively.* He also utilized diet, medication, vanishing cream and treatments with his hands.

In State v. Verbon (1932), 167 Wash. 140, 8 P.2d 1083, 1086, the Court said:

" * * * the profession and practice of the religion must be itself a cure. The sufferer's mind must be brought into submission to the infinite mind, and in this must be the healing. The operation of the power of spirit must be, not indirect and remote, but direct and immediate. If that were not so, a body of men who claimed divine inspiration might prescribe drugs and perform surgical operations under cover of the law. While the healer inculcates the faith of the church as a method of healing, he is immune.

"*When he goes beyond that, puts his spiritual agencies aside, and takes up the agencies of the flesh, his immunity ceases.* He is then competing with the physicians on their own ground, using the same instrumentalities, and arrogating to himself the right to pursue the same methods, without the same training." (Emphasis supplied.)

Judgment affirmed.

STEVENS, C. J., and CAMERON, J., concur.

NOTE: Judge FRANCIS J. DONOFRIO having requested that he be relieved from consideration of this matter Judge J. THOMAS BROOKS was called to sit in his stead and participate in the determination of this decision.