556 P.2d 27

James B. BILBREY, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Redding Pump & Well Service, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. I CA–IC 1531.

Court of Appeals of Arizona, Division 1, Department C.

Sept. 2, 1976.

Rehearing Denied Sept. 29, 1976.

Petition for Review Denied Nov. 9, 1976.

Ely & Bettini by Stephen L. Weiss, Phoenix, for petitioner.

John H. Budd, Jr., Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

Lewis & Roca by James B. Long, Phoenix, for respondent employer and carrier.

## OPINION

FROEB, Judge.

The issue in this review of an Industrial Commission award is whether a work-related mental disability can be established in an Industrial Commission hearing solely on the basis of testimony by a licensed clinical psychologist.

The petitioner fell and struck his head against an iron structure while employed by the Redding Pump & Well Service. As a result of the fall, petitioner suffered a moderately severe head injury. The State Compensation Fund (the Fund) accepted the claim and paid benefits to petitioner until March 31, 1975, when a neurosurgeon, aided by a group consultation report, concluded that petitioner's condition was stationary with no permanent physical impairment.

The petitioner protested the termination of benefits by the Fund on the ground that he was emotionally disabled as a result of the accident. The Industrial Commission (the Commission) then scheduled a hearing at which Herbert L. Collier, Ph.D., a licensed clinical psychologist, testified there was a need for continuing treatment for

permanent mental impairment attributable to the petitioner's industrial injury. There was no other evidence relating to petitioner's mental condition. The Fund did not deny that Dr. Collier was a well-qualified psychologist, but objected to his testimony on the ground that a *medical* opinion was necessary to establish the mental condition and its causal relationship to the work-related physical injury. The Commission agreed and thus denied the claim for continued medical treatment and permanent disability. We find the determination made by the Commission was correct.

▉ It is well-established that if the result of an industrial accident is not one that is clearly apparent to the layman, the physical condition of the injured employee and the causal connection between the accident and such condition can only be determined by expert medical testimony. *Wheeler v. Industrial Commission,* 94 Ariz. 199, 382 P.2d 675 (1963). The Arizona Supreme Court has held that a mental disability, causally connected to a physical injury received by an employee arising out of and in the course of his employment, is compensable under the Arizona Workmen's Compensation Act. *Cammeron v. Industrial Commission,* 98 Ariz. 366, 405 P.2d 802 (1965). In *Cammeron,* the petitioner claimed that a work-related physical injury had resulted in a mental disability. The court cited the *Wheeler* rule, supra, and indicated that expert *medical* testimony was required to prove the mental disability of the petitioner and its relationship to the physical injury. Other Arizona workmen's compensation decisions have referred to the use of expert *medical* testimony to establish the relationship between physical injuries and mental disabilities. See, for example: *International Metal Products Division of McGraw Edison Co. v. Industrial Commission,* 2 Ariz.App. 399, 409 P.2d 319 (1965); *Baxter v. Industrial Commission,* 6 Ariz.App. 156, 430 P.2d 735 (1967). Recently this court held that the report of a psychologist was not sufficient to support a petition to reopen proceedings in a workman's compensation case where the statute pertaining to reopening (A.R.S. § 23–1061(H)) required the report of a physician. *Arizona State Welfare Dept. v. Industrial Commission,* 25 Ariz.App. 6, 540 P.2d 737 (1975). The import of these decisions is that only expert medical testimony can be used to establish the causal link between a physical injury and a mental disability. We turn then to whether a licensed clinical psychologist can present the required expert *medical* testimony in hearings before the Commission.

Arizona Revised Statute § 32–2061, et seq., establish the requirements for the licensing and regulation of psychologists. A.R.S. § 32–2084 states:

> No provision of this chapter shall authorize any person to engage in any manner in the practice of medicine as defined by the laws of this state.

The "practice of medicine" is defined in A.R.S. § 32–1401(9.) as :

> . . . *diagnosis, treatment or correction of,* or the attempt to, or the holding of oneself out as being able to diagnose, treat or correct any and *all human diseases, injuries, ailments or infirmities, whether physical or mental, organic or emotional,* by any means, methods, devices or instrumentalities, except as the same may be among the acts or persons not affected by this chapter. (Emphasis added.)

At the hearing, Dr. Collier testified that, in his opinion, petitioner continued to suffer emotional consequences from the accident and that there was a direct causal relationship between the petitioner's physical injury and his emotional condition. We think that such an opinion must be considered a "medical diagnosis." One Arizona case has defined "diagnosis" as the act or art of recognizing the presence of disease from its symptoms. *State v. Horn,* 4 Ariz. App. 541, 422 P.2d 172 (1967). Dorland's Illustrated Medical Dictionary (25th Ed.) defines "diagnosis" as "the art of distinguishing one disease from another." Dor-

land's also defines it as "the determination of the nature of a case of disease." One of the definitions given for the term "diagnosis" in Webster's Third International Dictionary is an "investigation or analysis of the *cause* or nature of a condition, situation or problem." (Emphasis added.) It seems clear to us that in order to find a causal connection between a mental condition and an industrial accident, it would be necessary to make a "diagnosis" of the mental condition, something which is not within the scope of the licensing privilege of a psychologist under Arizona statutes. The Commission was correct, then, in refusing to consider the testimony of Dr. Collier on this point, since it could not constitute a medical opinion.

Nevertheless, petitioner contends that *Chalupa v. Industrial Commission*, 109 Ariz. 340, 509 P.2d 610 (1973) is authority (by analogy) that a clinical psychologist may testify as to the cause of a mental condition since such areas are within the realm of his knowledge and training. *Chalupa* held that a chiropractor was competent to testify as to the causation of abnormalities of the spine because such area was within "the limited field in which he is licensed by the State." A.R.S. § 32–921, et seq., set forth the licensing requirements and regulations relating to the practice of chiropractic. In contrast to the statutes governing the practice of psychology, the statutes affecting chiropractors do not contain a blanket prohibition against the practice of medicine. A.R.S. § 32–925 states the privileges and limits of the practice of chiropractic:

> A person licensed under this chapter to practice chiropractic may adjust by hand any articulations of the spinal column. He shall not prescribe for or administer medicine or drugs, practice major or minor surgery, obstetrics or any other branch of medicine or practice osteopathy or naturopathy unless he is otherwise licensed therefor as provided by law.

As chiropractors are authorized by statute to "adjust by hand any articulations of the spinal column," it follows, and the court in *Chalupa* so found, that chiropractors would be considered competent to diagnose conditions which require such treatment and to testify as to their causes. Absent a similar authorization in the statutes governing the practice of psychology, *Chalupa* is not controlling.

■ Petitioner relies upon cases from Oregon and Louisiana which take a position contrary to our decision here. See: *Busby v. Martin*, 166 So.2d 660 (La.App.1964); *Sandow v. Weyerhaeuser Co.*, 252 Or. 377, 449 P.2d 426 (1969). However, the statutes of both states differ from those in Arizona relating to this subject and justify a different result from that which we reach in this opinion. This points up the fact that the privileges and limits of the psychology profession are primarily matters to be determined by the legislature. Any extension of such privileges and limits must be made by legislative enactment not court decision.

Since we have found that the testimony of Dr. Collier was properly excluded by the Commission, the only evidence which could be considered was the neurosurgeon's report finding that petitioner's condition was stationary with no permanent impairment. For this reason the Decision Upon Hearing and Award of the Commission is affirmed.

EUBANK, P. J., concurring.

HAIRE, Chief Judge, Division 1 (dissenting).

The question presented to this court is whether the testimony of a clinical psychologist is competent in workmen's compensation proceedings to establish causation for mental disability. The majority holds that it cannot be competent for that purpose, basing their holding upon the premise that "medical" testimony is necessary to show causation in workmen's compensation proceedings. This premise has no statutory basis, but has often been stated in a modified form in workmen's compensation decisions, to the effect that unless apparent to a layman the physical condition and causal connection can only be

determined by expert "medical" testimony. In my opinion the statements in prior Arizona decisions must be considered in the factual context given, that is, in a factual context where the only testimony presented was that of laymen witnesses and of medical doctors. To me the statement only gives recognition to a problem of proof. For example, the causal relationship between a compound fracture and the industrial accident could generally be established by the testimony of the layman, whereas in other circumstances expert witness testimony would be necessary, with that expert witness generally being a medical doctor. I do not know of any legal principle which would support the exclusion of other expert testimony coming from witnesses qualified in other recognized areas of expertise. Thus in *Chalupa*, supra, the Arizona Supreme Court recognized that a non-medical doctor, a chiropractor, could be an expert witness as to causation in the area of his expertise. Likewise, in my opinion, a licensed clinical psychologist could give expert causation testimony within the area of his expertise, whether considered "medical" or otherwise. I cannot ascribe any magical or talismanic effect to the Supreme Court's prior use of the word "medical" under these circumstances.