739 P.2d 347

**Michael R. O'LOUGHLIN,**
**Claimant-Appellant,**

**v.**

**CIRCLE A CONSTRUCTION, Employer,**

**and**

**Northern Insurance Company of New York, Surety,**
**Defendants-Respondents.**

**No. 16367.**

Supreme Court of Idaho.

May 29, 1987.

---

Kenneth L. Pedersen and Curtis Webb (argued), of the firm Webb, Burton, Carlson & Pedersen, Twin Falls, for claimant-appellant.

Karen L. Lansing, of the firm Hawley, Troxell, Ennis & Hawley, Boise, for surety, defendants-respondents.

BISTLINE, Justice.

The claimant, Michael O'Loughlin, has been employed primarily as a truck driver. On November 10, 1984, O'Loughlin was driving a truck hauling sugar beets within the course of his employment for Circle A Construction, when he blacked out momentarily. Although he regained consciousness before there was an accident, and the truck did not leave the highway, O'Loughlin was badly frightened by the incident. He received no physical injuries from the incident. After informing his supervisor and after resting for a while, he decided to return home. He did not work the next day. On the day following, he saw a doctor and returned to work two weeks later. He continued driving without incident until he was laid off from this season's employment.

O'Loughlin began work next with Basterrechea Trucking in Gooding and worked without incident for Basterrechea Trucking until February of 1985 at about which time he became concerned about having another blackout while driving; he suffered symptoms of chest pains, shortness of breath, and had difficulty sleeping. Frequently, he would wake up in the middle of the night with visions of red lights, such as tail lights or police lights, which disturbances would sometimes last into the daylight hours. O'Loughlin was affected by this anxiety to the extent that he quit his employment with Basterrechea Trucking. With the exception of one trip in March or April of 1985, he has not driven a truck since.

Circle A and its surety have made not even a suggestion that O'Loughlin is a malingerer. On the contrary, the record indicates that he is a hard-working family man who took pride in his work. O'Loughlin's treating psychologist testified as follows:

[MR. NIELSON] Q: In your discussion with him did you find him to be a person with a psychological make up who enjoyed driving truck?

[DR. KAUFMAN] A: Without a doubt. He would talk about it with great pride. He spoke about his lack of any accidents on-the-job, about having occasions where he was considered the best truck driver, therefore he could—in line for the best truck and—well, he always spoke very, very positively about it.

. . . .

Q. Okay. What significance do you attribute to the fact that he continued to drive for at least a month or a month and a half before he started having these panic disorder problems?

A. Well, I think that's pretty characteristic of Michael as I have come to know him. He loses a job one day; he finds one the next. I mean, that's what he has always done. . . .

. . . .

Q. You mentioned that as a result of your evaluation of the MMPI test that he didn't appear to be someone who was trying to fake a problem.

In your discussions with him has there been any indication or anything that you have noticed on your part that would indicate to you that Michael is making up the problems that he is having right now?

A. No, I really don't think so at all. He has been so consistent in the way he has presented himself and reported vari-

ous facts that I have no reason to disbelieve him based on what he said.

And the MMPI was just, I think, a little extra support for that assurance. There was no impression management or attempt to fake bad on there as we sometimes see of people. Tr., pp. 54, 64, 65–66.

O'Loughlin had a previous experience in which he blacked out while driving in 1972. Medical testing completed after the 1972 incident and after the incident in 1984 here at issue failed to disclose a known medical cause of O'Loughlin's blackouts and no medical evidence relating to cause was presented to the Commission.

Dr. Charles R. Kaufman, Ph.D., a clinical psychologist licensed by the state of Idaho who was treating O'Loughlin, testified that the panic disorder developed as a result of the November 10, 1984 incident. Dr. Kaufman further testified that panic disorder is usually triggered by some kind of frightening event, or trauma, and that the panic disorder consists of producing random occasions of fear and anxiety which are attributable to a patient's past terrifying incident.

Dr. Kaufman did not establish that panic disorders, such as the one diagnosed in O'Loughlin, are peculiar to truck driving. He indicated that between two and four percent of the population suffers from some sort of panic disorder. However, he testified that it was the combination of O'Loughlin's blackout together with the fact that he was, at the time, driving a truck which resulted in his becoming disabled by the panic disorder.

The claimant's timely application for a hearing, stated that he became disabled as a result of a panic disorder which was caused by a blackout while driving a truck on November 10, 1984.

When the matter was presented to the Industrial Commission, by stipulation of counsel, the hearing was limited to the issue of compensability. O'Loughlin's employer, Circle A Construction, and its surety, had answered denying that O'Loughlin's panic disorder was compensable on the basis that it had not arisen out of the claimant's employment.

The Commission made the following specific finding of fact: "The record indicates that Claimant is disabled from truck driving because of the panic disorder and *that the disorder developed from Claimant's fear of experiencing another blackout while he is driving truck.*" R., p. 10 (emphasis added). The commission's conclusions of law were somewhat in the same vein:

It is not necessary to address many of the issues raised by the parties, such as whether or not Claimant's panic disorder is an occupational disease within the meaning of the Workmen's Compensation Act. Although there is no question that Claimant suffers from a disability as a result of his panic disorder, Claimant has not sustained his burden of proving that the disorder itself arises out of his employment.

The evidence established that Claimant's anticipatory anxiety is directed toward an apprehension of a further blackout while driving truck. *According to the uncontroverted testimony, and the findings above, this fear is the result of Claimant's blackout of November 10, 1984 while he was driving truck within the course and scope of his employment.* The precipitating cause of the panic disorder is not truck driving, however, but the blackout that Claimant experienced and his fear of a recurrence. There is no evidence relating to the cause of the blackout itself, and therefore, Claimant cannot establish that the blackout, and the panic disorder which results from it, arises out of Claimant's employment. Claimant cannot prevail without establishing this causal connection, through expert medical testimony. *Green v. Columbia Foods, Inc.,* 104 Idaho 204 [657 P.2d 1072 (1983) ]; *Sykes v. C.P. Clare & Co.,* 100 Idaho 761 [605 P.2d 939 (1980) ]. R., pp. 10–11 (emphasis added).

This appeal requires us to address the following issues: (1) Whether the Industrial Commission correctly applied the princi-

ples of causation; (2) Whether the Commission correctly ruled that the causal connection between O'Loughlin's panic disorder and his employment must be established through expert medical testimony.

The scope of our review on appeal from decisions of the Industrial Commission is limited to questions of law. *Madron v. Green Giant Co.*, 94 Idaho 747, 497 P.2d 1048 (1972); Idaho Const. Art. 5 § 9, 1935 amendment. In reviewing Commission findings of fact, we may set aside a finding only where it is not supported by substantial competent evidence. *Gradwohl v. J.R. Simplot Co.*, 96 Idaho 655, 534 P.2d 775 (1975); I.C. 72–732(1) (1973).

But here the pertinent facts are uncontroverted. Instead, the issues turn upon the proper application of the law to the undisputed facts. Thus, both issues enumerated above involve a review of questions of law. *Hix v. Potlatch Forests, Inc.*, 88 Idaho 155, 159, 397 P.2d 237, 241 (1964), citing *Johnston v. A.C. White Lumber Co.*, 37 Idaho 617, 217 P. 979 (1923); *Ybaibarriaga v. Farmer*, 39 Idaho 361, 228 P. 227 (1924). The standard is one of free review. The Honorable Donald L. Burnett, Jr., of our Court of Appeals, has written: "An appellate court is expected to declare the law and may substitute its view for that of a trial court or agency upon a legal issue." Standards of Appellate Review in State and Federal Courts, § 3.2, p. 3–3, *Idaho Appellate Handbook* (Idaho Law Foundation, Inc., 1985).

### I.

■ Although the Industrial Commission concluded that the sole cause of O'Loughlin's panic disorder was the blackout he experienced, it made no analysis of the role of claimant's truck driving employment as a contributing cause. Our prior cases establish that a claimant's employment need not be the only cause of disability, but rather that the job must have contributed to the disability:

" 'It is sufficient to say that an injury is received "in the course of" the employment when it comes while the workman is doing the duty which he is employed to perform. It arises "out of" the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment.' " *Kiger v. Idaho Corp.*, 85 Idaho 424, 430, 380 P.2d 208, 210 (1963), *quoting Eriksen v. Nez Perce County*, 72 Idaho 1, 235 P.2d 736; *accord, Comish v. Simplot Fertilizer Co.*, 86 Idaho 79, 86, 383 P.2d 333, 338 (1963).

Thus, the Commission incorrectly applied our prior case law when it concluded that "[t]he precipitating cause of the panic disorder is not truck driving ... but the blackout that Claimant experienced and his fear of a recurrence." R., p. 11. *Kiger* and *Comish* establish that employment need only *contribute* to the disability, not "precipitate" it or be the cause first in time that ultimately produces the result.

The Commission's conclusion directly contradicts or negates a specific, and *the critical*, finding of fact on this issue:

The record indicates that claimant is disabled from truck driving because of the panic disorder *and that the disorder developed from claimant's fear of experiencing another blackout while he is driving truck.* R., p. 10 (emphasis added).

In the fce of this irreconcilable conflict,[1] together with the failure to apply correctly

1. Stated differently, the Commission's order is not supported by this finding of fact. I.C. § 72–732(4) (1973).

prior case law, the case will properly be remanded to the Commission for reconsideration in light of the principles of causation as set out in *Kiger* and *Comish*.

■ As noted above, 112 Idaho at page 1050, 739 P.2d at page 349, the Commission ruled, as a matter of law, that O'Loughlin did not sustain "his burden of proving that the disorder itself arises out of his employment." R., p. 11. However, this ultimate conclusion was derived through the nonapplication of the principles of causation discussed above. The Commission incorrectly isolated the blackout itself as *the* sole cause of O'Loughlin's panic disorder. This in turn paved the way for the statement that:

> There is no evidence relating to the cause of the blackout itself, and therefore, claimant cannot establish that the blackout, and the panic disorder which results from it, arises out of Claimant's employment. R., p. 11.

Accordingly, the Commission's holding that O'Loughlin did not sustain his burden of proving causal connection between his disorder and his employment cannot stand.

## II.

■ On remand, the Commission should consider the testimony of Dr. Kaufman as competent evidence on the issue of the causal connection between O'Loughlin's panic disorder and his employment. The Commission requirement of expert medical testimony, taken literally, apparently prevented it from affording proper consideration to Dr. Kaufman's testimony because of his being a Ph.D. clinical psychologist and not an M.D. O'Loughlin's disorder, however, appears to be primarily psychological. Since the Commission, in its conclusions of law, isolated O'Loughlin's blackout as *the* cause of the panic disorder, it appears to have not thoroughly considered Dr. Kaufman's testimony relating to the causal relationship between the disorder and truck driving.

Whether a psychologist is competent to testify as to the causal connection between employment and disability has not been heretofore challenged in Idaho. The closest we have come to that issue is a recent case, authored by Justice Bakes, which reviewed an Industrial Commission claim in which claimant sought to establish a link between work-related physical injuries and a subsequent hysterical neurosis arising out of those injuries. *Paulson v. Idaho Forest Industries, Inc.*, 99 Idaho 896, 591 P.2d 143 (1979). Obviously, a psychiatrist, being also a trained M.D., would fall within the judge-made rule of *Green* and *Sykes*, requiring expert *medical* testimony. A search of our cases reveals that none of them have prohibited, nor endorsed, the use of expert testimony from a Ph.D. clinical psychologist, licensed by the state, when the nature of the claimant's disorder is psychological, not physiological. However, several of our neighboring states have given the proposition thorough consideration.

In *Madison Granite Co. v. Industrial Commission of Arizona*, 138 Ariz. 573, 676 P.2d 1 (App.1983), the court considered whether a Ph.D. microbiologist was competent to testify to the causal link between a work accident and the claimant's subsequent tuberculosis. The court reviewed and overruled an earlier case, *Bilbrey v. Industrial Commission*, 27 Ariz.App. 473, 556 P.2d 27 (1976), which held that a licensed clinical psychologist could not present expert testimony on the causal relationship between a worker's physical injury and later emotional problems. The Arizona court concluded that Federal Rule of Evidence 702 provided ample authority supporting the admission of testimony from a qualified expert, be the expert medical or nonmedical. 676 P.2d at 4.

At the writing of the *Madison Granite* opinion, *Bilbrey* was already weakened as authority by *Hooper v. Industrial Commission*, 126 Ariz. 586, 617 P.2d 538 (App. 1980). That case held that a revision in an Arizona medical licensing statute provided authority to permit psychologists to testify. The revised statute reads as follows:

> No provision of this chapter shall authorize any person to engage in any manner in the practice of medicine as defined by the laws of this state, except that any person certified by the provisions of this

chapter shall be permitted to diagnose, treat, and correct human conditions ordinarily within the scope of the practice of a psychologist. A.R.S. 32–2084, *id.* at 539.

The court reasoned that "[s]ince by statute psychologists are entitled to diagnose, treat, and correct mental conditions within their field, it follows that they are also competent to testify regarding the causes of such conditions." *Id.* at 540.

Idaho has a similar statutory scheme although our Code is not as precise on this point as Arizona's. I.C. § 54–1804 (1979), the medical practice act, provides:

54–1804. **Unlicensed practice—Penalties and remedies relating to unlicensed practice.**—(1) Under the circumstances described and subject in each case to the limitations stated, *the following persons, though not holding a license to practice medicine in this state, may engage in activities included in the practice of medicine:*

. . . .

(e) A person authorized *or licensed* by this state to engage in activities *which may involve the practice of medicine;*

. . . .

The "practice of medicine" is defined by the act as, in part:

(a) To investigate, diagnose, treat, correct, or prescribe for any human disease, ailment, injury, infirmity, deformity, or other condition, *physical or mental,* by any means or instrumentality, or

(b) To apply principles or techniques of medical science in the prevention of any of the conditions listed in subsection (a) of this section. . . . I.C. § 54–1803(a) and (b) (1979).

The definitional section of the psychologist licensing statute defines the "practice of psychology" as follows:

(f) "Practice of psychology" means the application of established principles of learning, motivation, perception, thinking, and emotional relationships to problems of personnel evaluation, group rela-

tions, and behavior adjustment. *The application of said principles includes, but is not restricted to, counseling and the use of psychotherapeutic measures* with persons or groups with adjustment problems in the areas of work, family, school, and personal relationships; measuring and testing of personality, intelligence, aptitudes, emotions, public opinion, attitudes, and skills; and doing research on problems relating to human behavior. I.C. 54–2302(f) (1979) (emphasis added.)

It bears noting that our psychologist licensing statutes establish strict requirements that must be met in order for an applicant to receive a license to practice. Generally, one must hold a Ph.D. in psychology plus additional post-graduate training and experience, or a master's degree in psychology plus five years of practice and an internship approved by the Idaho State Board of Psychologist Examiners. In addition, an examination may be required. *See* I.C. § 54–2307 [Cum.Supp.1986]; I.C. § 54–2308 (1979).

■ Taken together, the statutes provide a basis for the same conclusion that the *Hooper* court in Arizona derived: one who is entitled to diagnose, treat, and correct mental conditions is also competent to testify regarding the causes of such conditions. The important point is that, just as there is no case law prohibition against psychologists testifying in cases such as O'Loughlin's, there is no statutory impediment either. Like their colleagues in Arizona, our licensed psychologists enjoy the same qualified privilege to practice medicine, within the area of their competence.

Other states in our region have reached similar conclusions. In *Sandow v. Weyerhaeuser Co.,* 252 Or. 377, 449 P.2d 426 (1969), the court reviewed a trial court refusal to admit a clinical psychologist's testimony on the ground that he was not medically trained.

The action was under the Jones Act.[2] The issue was whether the plaintiff's emo-

---

2. The Jones Act, or Merchant Marine Act, 41 Stat. 1007 (1920), 46 U.S.C. § 688 (1952) gives to

seamen or their personal representatives a right to action against the employer for negligence in

tional depression was caused by an injury sustained in the course of his employment. The court held that a properly-qualified clinical psychologist is competent to testify on that issue. *Id.* 449 P.2d at 429–30.

Similarly, Montana has allowed a psychologist to testify to the causal relation between a job injury and the claimant's later suicide. *Campbell v. Young Motor Co.,* 684 P.2d 1101 (Mont.1984).

New Mexico, a jurisdiction that takes the opposite position, does so based on a statute that specifically mandates that *only* expert *medical* testimony will do:

> In all cases where the defendants deny that an alleged disability is a natural and direct result of the accident, the workman must establish that causal connection as a *medical probability by expert medical testimony.* No award of compensation shall be based on speculation or on expert testimony that as a medical possibility the causal connection exists. [Emphasis in original.] N.M.S. 52–1–28(B) *cited in Fierro v. Stanley's Hardware,* 104 N.M. 401, 722 P.2d 652, 660 (1985).

The cases cited in the Commission's order, on examination, do not stand for the proposition that a psychologist may not testify in an Industrial Commission proceeding on the issue of causation. In *Green v. Columbia Foods, · Inc.,* 104 Idaho 204, 657 P.2d 1072 (1983), a medical expert did testify, but the Commission found claimant did not sustain his burden; in *Sykes v. C.P. Clare & Co.,* 100 Idaho 761, 605 P.2d 939 (1980), no experts of *any* kind were called by claimant.

In this case, Dr. Kaufman received his Ph.D. in clinical psychology in 1979. In 1981 he became licensed to practice in Idaho. He testified that he had treated between 18 to 24 clients of his own who suffered from a panic disorder. In addition, he has consulted with other practitioners on panic disorder clients of their own. As a result, Dr. Kaufman appears eminent-

ly qualified to testify to the causal connection between O'Loughlin's job-related incident and his subsequent panic disorder. Significantly, no objection to Dr. Kaufman's testimony on this point was raised by opposing counsel at the hearing.

■ Because of the manner in which the Commission disposed of this case, it did not reach the question of whether O'Loughlin's panic disorder is an occupational disease within the meaning of the Workmen's Compensation Act. Since O'Loughlin has alleged no physical injury, it is clear that in order to recover he must bring his panic disorder within the definition of "occupational diseases" contained in I.C. § 72–102(17) (Cum.Supp.1986), and our case law interpreting that provision. *See also* I.C. §§ 72–437 (1973), 72–438 (Cum.Supp.1986), and 72–439 (1973). On remand, this appears to be the primary issue to be resolved by the Commission.

Therefore, we reverse and remand to the Industrial Commission for proceedings consistent with this opinion. Costs to appellant.

DONALDSON and HUNTLEY, JJ., concur.

BAKES, Justice, concurring in the reversal:

I concur with the Court's statement that "employment need only *contribute* to the disability, not 'precipitate' it or be the cause first in time that ultimately produces the result." *Ante* at 1051–1052, 739 P.2d at 350–351. I believe the commission erred when it held, as a matter of law, that "[t]here is no evidence relating to the cause of the blackout itself, and therefore, claimant *cannot* establish that the blackout, and the panic disorder which results from it, arises out of the Claimant's employment." However, both the Court and the commission apparently are of the view, at least in this case, that the issue of causation is a question of law rather than a question

---

a way similar to railroad workers under the Federal Employers' Liability Act. The Act applies to any seaman who shall suffer personal injury in the course of his employment. Both

of those acts are in purpose similar to state workman's compensation acts. The rules and the relief may vary.

of fact.[1] The questions of (1) whether the claimant had a "panic disorder"; (2) whether it arose out of the claimant's employment; and (3) whether or not it constituted an occupational disease as defined in I.C. § 72–102(17), are, in my opinion, all questions of fact rather than questions of law, which the commission must decide from the evidence before it. I agree with the Court that evidence of a licensed psychologist is admissible as expert testimony to establish the claim. Since it appears that the commission, in its Conclusion of Law II, erroneously concluded as a matter of law that the "claimant cannot establish that the blackout, and the panic disorder which results from it, arises out of Claimant's employment," the commission's decision must be reversed and the matter remanded for further proceedings. However, I cannot agree with the suggestions in the majority opinion that any of the three issues listed above can, on this record, be decided as questions of law, rather than questions of fact.

SHEPARD, Chief Justice, dissenting.

I agree with much that is stated by Bakes, J. in concurring in the reversal. However, I believe one essential factor is overlooked. Claimant allegedly suffers from blackouts. The Commission held that no evidence was presented relating to the cause of the blackouts. Whether denominated as a matter of law or a matter of fact, the record supports that holding of the Commission, *i.e.*, no evidence was presented on that issue because the cause is unknown. Also, claimant allegedly suffers from a panic disorder which he claims is causally related to the blackout. There is no assertion made by claimant that the panic disorder relates in any way to his employment, but rather results from the blackouts. Since there was no evidence causatively linking the employment to claimant's blackouts and the resulting panic disorder, I can perceive no significance in whether that lack of evidence is viewed as a matter of law or as a matter of fact. In either event, I believe the Commission was correct. To assert that the Commission erred because it stated that the claimant "cannot" establish a causative link with employment, instead of stating that the claimant "did not" establish such a causative link, is in my view being hypertechnical.

---

1. The Court's opinion, *ante* at 1051, 739 P.2d at 350, quoting from the Standards of Review in State and Federal Courts, § 3.2, *Idaho Appellate Handbook* (Idaho Law Foundation, Inc., 1985), states: "An appellate court is expected to declare the law and may substitute its view for that of a trial court or agency upon a legal issue." While this is an accurate statement of our constitutional authority under Art. 5, § 9, of the Idaho Constitution which limits our review of decisions of the Industrial Commission to "questions of law," that limitation cannot be so easily circumvented by merely stating that factual "issues turn upon the proper application of the law to the undisputed facts," *ante* at 1051, 739 P.2d at 350, and then ruling that issues such as causation, or whether or not a condition is an occupational disease which arises out of the employment, are questions of law rather than questions of fact.