STATE

v.

Richard GARDNER.

No. 91–311–C.A.

Supreme Court of Rhode Island.

Nov. 19, 1992.

## OPINION

MURRAY, Justice.

This case is before the court on the defendant's appeal from his conviction in Kent County Superior Court. The indictment charged the defendant with eleven counts of kidnaping, burglary, first-degree sexual assault, assault with a dangerous weapon, possession of a stolen vehicle, driving to elude a police vehicle, carrying a concealed weapon, and second-degree sexual assault. At trial the defendant admitted that he had committed the crimes with which he was charged and raised the defense of lack of criminal responsibility.

The defendant's conviction stemmed from three incidents occurring in the Warwick area of Rhode Island in the summer of 1988. In each instance defendant abducted and kidnaped a small male child of approximately six to ten years of age. In one of these incidents defendant abducted a child at knife point from the child's bedroom. In another instance defendant kidnaped the child and brought the child to a park where defendant tied the child to a tree and left him unattended for hours. The defendant sexually assaulted two of these children.

On July 30, 1988, the police arrested defendant in connection with these kidnapings. In a series of five confessions made to the police following his arrest, defendant admitted that he had committed the crimes set forth in the indictment. At trial the prosecutor had police officers read each of these confessions into evidence and, after deliberation, the jury convicted defendant of all eleven charges. The trial justice sentenced defendant to 190 years in prison.

On appeal we only need to address two of the allegations of error raised by defendant. First, defendant claims that the trial justice erred by excluding testimony from defendant's leading expert concerning whether defendant lacked sufficient mental capacity at the time of the perpetration of the crimes. Second, defendant claims that the trial justice erred by excluding from evidence testimony regarding the Minnesota Multiphasic Personality Inventory, a diagnostic psychological test, which defendant's expert relied upon in diagnosing defendant. Because we believe the trial justice committed error in excluding this evidence, we reverse defendant's conviction and remand the case for a new trial.

I

EXCLUSION OF EXPERT TESTIMONY REGARDING DEFENDANT'S MENTAL STATE AT THE TIME OF THE OFFENSES

It is helpful to begin with a review of the defense of lack of criminal responsibility.

Prior to our decision in *State v. Johnson,* 121 R.I. 254, 399 A.2d 469 (1979), Rhode Island followed the *M'Naghten* test to determine the validity of insanity pleas. Stated briefly, the *M'Naghten* standard instructed the jury to determine " 'whether the defendant had the capacity to know right from wrong in respect to the particular act charged.' " *Id.* at 260 n. 3, 399 A.2d at 472 n. 3. *M'Naghten,* therefore, focused solely on cognitive capacity: the capacity of the defendant to understand the moral nature of his or her behavior. *Id.* at 261, 399 A.2d at 473.

In abandoning *M'Naghten,* we concentrated on two primary problems with the right/wrong test. First, *M'Naghten* was predicated upon an outdated psychological concept. As we stated, "[i]nsanity affects the whole personality of the defendant, including will and emotions," not just cognitive capacity. *Id.* (citing *Durham v. United States,* 214 F.2d 862, 871–72 (D.C.Cir. 1954), *overruled on other grounds by United States v. Brawner,* 471 F.2d 969, 982 (D.C.Cir.1972)). Second, the *M'Naghten* standard restricted expert testimony to the issue of a defendant's cognitive ability and deprived the jury of a true and complete picture of a defendant's mental state. 121 R.I. at 262, 399 A.2d at 473 (citing *United States v. Freeman,* 357 F.2d 606, 620 (2d Cir.1966)).

With these concerns in mind, we adopted a new test that closely resembled the proposal of the American Law Institute's Model Penal Code. 121 R.I. at 267, 399 A.2d at 476. We stated:

> "A person is not responsible for criminal conduct if at the time of such conduct, as a result of mental disease or defect, his capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law is so substantially impaired that he cannot justly be held responsible.
>
> The terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct." *Id.*

In attempting to establish this defense of lack of criminal responsibility, defendant introduced the testimony of Dr. Theoharis Seghorn. Doctor Seghorn had obtained his Ph.D. from Boston University in clinical psychology and had extensive experience working with sexual offenders at Bridgewater Treatment Center for Sexually Dangerous People located in Massachusetts. Doctor Seghorn also testified that he was working with New England Forensic Associates and that on fifteen to twenty occasions he had conducted evaluations to determine whether an individual was criminally responsible for the offenses they committed. The trial justice qualified Dr. Seghorn as an expert in psychology.

■ Doctor Seghorn proceeded to testify concerning the various medical records and reports he had used in diagnosing defendant. He testified that defendant suffered from schizotypal personality disorder whose foundations became fixed at some point during his childhood. At that point defense counsel asked the doctor whether in his opinion defendant suffered from this mental defect at the time that defendant committed the crimes. The trial justice refused to allow Dr. Seghorn to answer this question. The trial justice reasoned that this question required the doctor to take his diagnosis at the time that he evaluated defendant and relate this diagnosis back to the date of the perpetration of the crimes. The trial justice concluded that our decision in *State v. Johnson* required exclusion of testimony regarding this retroactive diagnosis. The trial justice also concluded that Dr. Seghorn was not qualified to make a retroactive diagnosis.

A

ROLE OF EXPERT TESTIMONY IN CASES RAISING THE DEFENSE OF LACK OF CRIMINAL RESPONSIBILITY

We believe the trial justice incorrectly interpreted our decision in *State v. Johnson.* *Johnson* attempted to carefully delineate the role of expert testimony in cases in which the defendant raises the defense of lack of criminal responsibility. We ex-

plained the role of expert opinion as follows:

> "Ideally, psychiatrists—much like experts in other fields—should provide grist for the legal mill, should furnish the raw data upon which the legal judgment is based. It is the psychiatrist who informs as to the mental state of the accused—his characteristics, his potentialities, his capabilities. But once this information is disclosed, it is society as a whole, represented by judge or jury, which decides whether a [person] with the characteristics described should or should not be held accountable for his acts." 121 R.I. at 266–67, 399 A.2d at 476 (quoting *United States v. Freeman,* 357 F.2d at 619–20).

In addition the *Johnson* opinion gave specific directions aimed at preserving the proper role for the jury. We stated that "the charge to the jury must include unambiguous instructions stressing that regardless of the nature and extent of the experts' testimony, the issue of exculpation remains at all times a legal and not a medical question." *Id.* at 270, 399 A.2d at 478. Under the *Johnson* formulation, the jury should hear all relevant expert testimony regarding a defendant's mental condition. The trial justice, however, must instruct the jury to weigh the credibility of the experts, make its own independent decision concerning whether the defendant suffered from a mental defect at the time of the perpetration of the crime, and determine whether there existed a sufficient relationship between the mental defect and the condemned conduct to conclude that the defendant should not be held responsible. *Id.*

■ In this case expert testimony concerning defendant's mental state at the time of the offenses is exactly the type of "grist for the legal mill" that *Johnson* contemplated would come before the jury. As noted above, the jury must determine whether defendant suffered from a mental defect at the time of the perpetration of the crimes. The jury should not perform this function in a vacuum; it should hear testimony on this issue from both prosecution

and defense expert witnesses, assess the credibility of their testimony, and determine if the defendant in fact suffered from this mental defect.

The state argues that to admit this evidence would result in expert testimony that encroaches on an area left to the jury. The state gleans this argument from our language in *Johnson* specifically making the issue of a defendant's mental state at the time of the crimes a jury question. *Id.* Nothing in our *Johnson* opinion, however, suggested that because the jury must determine the defendant's mental state at the time of the crime, experts could not testify on this issue. To the contrary, *Johnson's* direction to allow experts to provide the jury with a full and accurate picture of a defendant's mental state strongly indicates that this evidence is admissible.

Moreover, the state's argument that defendant's mental state at the time of the offense is an ultimate issue for the jury must fail in light of Rule 704 of the Rhode Island Rules of Evidence. Rule 704 states,

> *"Opinion on ultimate issue.*—Testimony in the form of an opinion otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

The advisory committee's note following Rule 704 goes even further. The note describes the state's argument as "empty rhetoric" (citing 7 Wigmore, *Evidence* § 1920 at 17–18 (Chadbourn rev. 1978)). Pursuant to Rule 704, Dr. Seghorn's testimony is admissible irrespective of the fact that it addresses an issue that the jury must ultimately decide.

■ Thus under Rhode Island law there is no categorical bar to expert testimony regarding a defendant's mental condition at the time he or she perpetrates a crime. Nevertheless, we still must determine whether Dr. Seghorn's testimony satisfies the requirements for the admission of expert testimony found in Rule 702 of the Rhode Island Rules of Evidence.

**B**

**RULE 702 ANALYSIS**

Rule 702 states as follows:

> *"Testimony by experts.*—If scientific, technical, or other specialized knowledge

will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of fact or opinion."

Rule 702 contains two requirements. First, a witness must be qualified by virtue of "knowledge, skill, experience, training or education." Second, the witness' proffered testimony must be helpful to the trier of fact. *State v. Correia*, 600 A.2d 279, 286 (R.I.1991).

■ In reviewing a trial justice's decision concerning the admissibility of expert testimony, this court will not reverse the decision unless "the trial justice abused his [or her] discretion, thereby causing substantial injury to the party seeking the admission of such evidence." *Id.* (quoting *Gaglione v. Cardi*, 120 R.I. 534, 538, 388 A.2d 361, 363 (1978)). Applying this standard of review, we believe the trial justice abused his discretion.

■ Beginning with the issue of qualification, Dr. Seghorn's experience with the issue of mental capacity qualified him to render an opinion to the jury concerning defendant's mental condition at the time of the offense. The trial justice already qualified Dr. Seghorn as an expert in psychology on the basis of his experience at the Bridgewater Treatment Center for Sexually Dangerous People and his experience performing fifteen to twenty evaluations to determine if an individual had sufficient mental capacity to be held criminally responsible for the crimes he or she committed.

The fact that Dr. Seghorn was a psychologist and not a psychiatrist is not dispositive on the issue of his qualifications as an expert. There is a growing trend among courts to allow a psychologist to testify about mental capacity in situations in which the psychologist has extensive training and experience with people suffering from mental defects. *State v. Robertson*, 108 R.I. 656, 662–63, 278 A.2d 842, 846 (1971). *See also* Annot., *Qualification of* *nonmedical psychologist to testify as to mental condition or mental capacity*, 78 A.L.R.2d 919 (1961) (citing numerous cases allowing psychologists to testify in regard to mental condition). In accordance with this line of cases, Dr. Seghorn's experience, education, and training rendered him qualified to offer his testimony to the jury.

In addition to being qualified, Rule 702 requires that the proffered expert testimony assist the trier of fact. Many jurisdictions take the position that expert testimony on the issue of insanity may be a legal conclusion and of no assistance to the jury. In *Gurganus v. State*, 451 So.2d 817, 821 (Fla.1984), for example, defense counsel asked an expert witness in a murder case if the defendant had the mental capacity to "premeditate." The court excluded this testimony because it asked a medical expert to come to a legal conclusion completely unrelated to the witness' area of expertise. *Id.*

■ This line between "legal conclusion" and "medical opinion" is often a difficult line to draw. It is clear that a medical expert cannot testify to the meaning of legal terms. A medical expert, for example, cannot testify that a defendant did or did not have the requisite "criminal capacity." *United States v. Milne*, 487 F.2d 1232, 1235 (5th Cir.1973), *cert. denied*, 419 U.S. 1123, 95 S.Ct. 808, 42 L.Ed.2d 823 (1975) (precluding a medical expert from testifying concerning the term "criminal capacity" because it is a legal term). Courts have greater difficulty when the question is whether a mental defect caused the defendant to commit the criminal acts. *See United States v. Brawner*, 471 F.2d at 1017–18 (stating that testimony that an act was or was not the product of mental disease was a legal conclusion couched in medical terms).

■ We need not draw the line between legal conclusions and medical opinions in this case. The testimony that defense counsel sought to elicit from Dr. Seghorn easily fell on the side of medical opinion. In Rhode Island the jury in a case involving lack of criminal responsibility

must determine (1) whether defendant suffered from a mental defect, (2) whether defendant suffered from this defect at the time of the offense, and (3) whether in light of this defect defendant can "justly be held responsible." *Johnson,* 121 R.I. at 270–71, 399 A.2d at 478. Defense counsel did not ask Dr. Seghorn to apply a legal standard by asking him if defendant "can justly be held responsible." Rather, defense counsel asked Dr. Seghorn if defendant suffered from a mental defect at the time of the perpetration of the offenses. The jury still must weigh the credibility of this testimony and make a legal conclusion concerning whether in light of this alleged defect defendant is criminally responsible. Accordingly, we conclude that Dr. Seghorn's testimony was the proper subject for expert testimony and would have assisted the jury in performing its function.

█ In excluding Dr. Seghorn's testimony, the trial justice expressed concern over the difficulty and potential unreliability of a retroactive diagnosis. We agree with the trial justice that the process of diagnosing a defendant after a crime and relating that diagnosis back to the time of the offense is an elusive undertaking. In a meta-physical sense it may be impossible to know the mental state of the defendant at the time of the criminal conduct. Absolute scientific certainty, however, is not the standard for the admissibility of expert testimony. *State v. Bertram,* 591 A.2d 14, 25 (R.I. 1991) (holding that degree of conclusiveness of expert testimony goes to its weight and not its admissibility); *State v. Correra,* 430 A.2d 1251, 1254 (R.I.1981) (stating "[w]hatever judicial skepticism may exist regarding psychiatric science is best resolved through the factfinder's determining the credibility and weight to be given the expert's testimony instead of resolving the uncertainty by a total exclusion"). The trial justice in this case could have and, indeed, should have addressed the problems posed by Dr. Seghorn's testimony by permitting the state to question his testimony on cross-examination.

█ Finally we have no doubt that the exclusion of Dr. Seghorn's testimony in-

jured defendant. *See Gaglione v. Cardi,* 120 R.I. 534, 538, 388 A.2d 361, 363 (1978) (requiring substantial injury to proponent of the evidence before we shall reverse an evidentiary ruling of a trial justice). Proving to the jury that defendant suffered from a mental defect at the time that he committed the crimes is an indispensable element of the defense of lack of criminal responsibility. The trial justice's exclusion of expert-opinion evidence on this issue effectively destroyed defendant's ability to prove his defense. Accordingly we hold that the trial justice erred in refusing to admit Dr. Seghorn's testimony.

## II

### EXCLUSION OF TESTIMONY REGARDING THE MINNESOTA MULTIPHASIC PERSONALITY INVENTORY

█ The second issue we address is whether the trial justice erred in excluding from evidence testimony regarding the Minnesota Multiphasic Personality Inventory (MMPI) report upon which Dr. Seghorn relied in diagnosing defendant. The debate over the admission of testimony regarding the MMPI arose in the following context. At trial, defense counsel questioned Dr. Seghorn regarding the various psychological tests he had administered in diagnosing defendant. Doctor Seghorn testified that he had administered three tests: the Rorschach (Ink Blot) test, the Thematic Aptitude Test (TAT), and the MMPI. The trial justice allowed Dr. Seghorn to testify regarding the Rorschach test and the TAT. Doctor Seghorn described why he had chosen to administer these tests, how he had administered the tests, and the test results.

Defense counsel then attempted to elicit testimony from Dr. Seghorn regarding the MMPI. Doctor Seghorn described the MMPI as an objective diagnostic test consisting of 560 True and False questions. Doctor Seghorn testified that a computer scores the test and generates a list of statements based on a profile analysis of the subject. Doctor Seghorn further testified that he had administered the MMPI several hundred times over the course of fifteen

years and that the MMPI is customarily relied upon in the field of psychology.

At that point the state objected to both the admission of the MMPI report and testimony regarding the results of the report on the grounds that because a computer scored the test, the results were hearsay. The trial justice correctly overruled the objection and cited Rhode Island law for the proposition that experts may rely upon tests administered by others in rendering a diagnosis. *See* Rule 703 of the Rhode Island Rules of Evidence (admitting hearsay evidence if an expert reasonably relies upon it in rendering an opinion).

The prosecutor then objected to the admission of the report on the grounds that the MMPI was equivocal. The prosecutor pointed to a caveat in the MMPI report which states:

"This MMPI interpretation can serve as a useful source of hypotheses about clients * * *. The personality descriptions, inferences and recommendations contained herein need be verified by other sources of clinical information since individual clients may not fully match this prototype."

The trial justice then reviewed the MMPI report and determined that the report was inadmissible because the report was equivocal and unreliable.

In support of the trial justice's decision, the state argues that the trial justice correctly exercised his discretion pursuant to Rule 403 of the Rhode Island Rules of Evidence. Rule 403 states:

"*[Exclusion] of relevant evidence on grounds of prejudice, confusion, or waste of time.*—Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury * * *."

The state also relies on *State v. Gomes,* 604 A.2d 1249, 1256 (R.I.1992), where we upheld the decision of a trial justice to exclude expert testimony concerning eyewitness identification on the grounds that such testimony was unreliable and misleading to the jury.

 We have no argument with the legal principle that a trial justice must find that expert testimony is sufficiently reliable before allowing it to go to the jury. Our review of the record reveals, however, that the trial justice reached an untrained and erroneous conclusion about the reliability of the MMPI report.

We begin with the impact of the disclaimer found in the MMPI report. The trial justice determined that this disclaimer rendered the MMPI too inconclusive to be of any help to the jury. As we noted earlier in this opinion, scientific certainty is not the standard for the admission of expert-opinion evidence. *State v. Bertram,* 591 A.2d at 25; *State v. Correra,* 430 A.2d at 1254. The degree of inconclusiveness of the MMPI went to the weight to be accorded to the report, not to its admissibility. The trial justice should have allowed Dr. Seghorn to testify why he relied upon the MMPI report and then allowed the prosecutor to question Dr. Seghorn about the "equivocality" of the report on cross-examination.

Next we consider the trial justice's finding that the MMPI was unreliable. The trial justice made his finding of unreliability on the basis of his incorrect interpretation of one of the MMPI questions. Question No. 137 asked defendant to reply True or False to the statement: "I believe my homelife [*sic* ] is as pleasant as most people I know." The defendant had answered "False." The MMPI report placed this answer in the category "Situational Stress Due to Alcoholism." The trial justice erroneously believed that defendant had answered, "True," to this question. Relying on this error, the trial justice could not conceive how a happy home life could result from alcoholism. The trial justice then concluded that the MMPI report was "totally unreliable" and excluded testimony regarding the report from evidence.

 We understand that a decision of the trial justice concerning the admission of evidence is entitled to great deference. *State v. Correia,* 600 A.2d at 286. Nevertheless, we believe that had the trial justice not misconstrued this MMPI question, he would have reached a different conclusion regarding the reliability of the MMPI re-

port. As Dr. Seghorn testified, the MMPI has been in existence since 1939 and is standard procedure for psychologists in diagnosing patients. In addition, the decisions of other jurisdictions concerning the reliability of the MMPI supports its admission. For example, in *People v. Stoll*, 49 Cal.3d 1136, 1158, 783 P.2d 698, 711, 265 Cal.Rptr. 111, 124 (1989), the Supreme Court of California analyzed the reliability of the MMPI and concluded that the test was standard and reliable. In light of this widespread use of the MMPI among psychologists, we conclude that the trial justice abused his discretion in excluding Dr. Seghorn's testimony regarding the MMPI report.

For the foregoing reasons we sustain the defendant's appeal, reverse the judgment of conviction, and remand the case to Superior Court for a new trial.